Lyman H. Smith, J.
Charged in a five-count indictment with various crimes of promoting gambling in the first and second degrees (Penal Law, §§ 225.10, .225.05) defendant Blanda moves pretrial to suppress nine tape recordings (CPL 710.20, subd. 2), the product of telephonic interceptions, obtained in pursuance of an eavesdropping warrant issued by the Honorable Edward O. Provenzano, Monroe County Judge, on August 28, 1973.
Defendant’s claims of error relate to alleged failures on the part of the police and court to fully comply with the statutory provisions as to delivery, custodial care and ensealing of the recordings returned to the issuing Justice (CPL art. 700; cf. People v. Nicoletti, 34 N Y 2d 249).
No claim is made at this juncture that the tape recordings have been altered or tampered with. In this regard, the defendant’s rights to move against the authenticity of the tapes have been reserved, pending defendant’s examination and review of *80 the same under direction of the court. Also reserved are the defendant’s rights to move against the validity of the underlying eavesdropping warrant.
Plenary hearings have been held upon the issues presently raised. From these hearings clear and convincing evidence reveals the following :
Surveillance by a special criminal investigation section of the Rochester Police Department of defendant’s premises and person at 193 Rutgers Street in the City of Rochester, together with reports from reliable informants during the winter, spring and summer of 1973, culminated in the issuance of a 30-day eavesdropping warrant on August 28, 1973. The combined warrant and order permitted telephonic surveillance of telephone communications transmitted and received by defendant, Andrew Blanda, over a telephone line bearing Rochester telephone number 442-9094, located at the above address.
Interception of incoming and outgoing telephone calls to and from the above-identified telephone number commenced on the same date (Aug. 28, 1973). Police surveillance of the premises continued. Telephonic interceptions, recordings and surveillance, pursuant to the warrant and order, were made on August 28, 29, 30, 31, September 3, 4, 5, and 6,1973. Logs were carefully kept and tape recordings made of all telephone calls by the detectives in immediate charge of the electronic interception device located in the offices of the special investigation unit at the Rochester Public Safety Building. Pursuant to the court’s warrant and order, electronic surveillance was confined on each date to the hours of 11:30 a.m. to 2:00 p.m. and 5:30 p.m., to 8:00 p.m.
Following each recording session the officers in charge, Detectives Robert J. Wiesner and Daniel P. Brennan, transcribed a duplicate tape of the original recording on another machine and, at the same time, identified and noted the numerical listings of all telephones to which calls were transmitted from the telephone then under surveillance at 193 Rutgers Street.
On each occasion the original of each tape recording thus obtained was placed in an individual plastic container. The plastic containers were digitally marked, No. 1, No. 2, No. 3, etc. Each container carried a label bearing an appropriately printed inscription setting forth the date, the correct time of day in hours and minutes of each recording and the transcribing speed of the tape. On each occasion the plastic containers were stacked together, wrapped in an encircling band of ‘ ‘ evidence ’ ’ tape, or ‘ ‘ adhesive ’ ’ tape, initialed and dated by the detective in *81 charge, i.e., in each instance, by Detective Robert J. Wiesner, who then placed the plastic containers in a four-drawer combination safe file in the office of the detective-in-charge of the special investigation section, Major John Neary.
Detective Wiesner testified that only Major Neary held the combination to the safe file. His testimony was uncontradicted. He also testified that on one or more occasions, following a taping session, and after completing duplication of the tapes at a late hour in the evening he placed the original tapes in his own locker in the offices of the special investigation section; that on the following day he transferred the tapes to Major Neary’s safe file, taped, dated and initialed by him as above-described. Detective Wiesner testified that he had the only key to his own locker and that there was no master key. There was no testimony to the contrary.
It is undisputed the police terminated electronic surveillance of the subject telephone on Thursday, September 6, 1973.
On Monday, September 10, 1973 the tape recordings and the intercept logs of telephone calls were delivered by Detectives Wiesner and Brennan to the issuing County Judge, the Honorable Edward 0. Provenzano, now Justice of the Supreme Court.
Goincidently with the return of the tape recordings and the intercept logs to Judge Provenzasto the special investigation section directed the telephone company to disconnect the electronic surveillance device. This was done on the same date, September 10, 1973.
A. [1] ‘ IMMEDIATE DELIVERY ’ ’
Initially, the defendant contends that the four-day period, from Friday (Sept. 7, 1973) to Monday (Sept. 10, 1973) constituted an impermissible delay in making delivery of the telephone logs and tape recordings to the “ issuing justice ”, County Judge Proveuzaho. Defendant urges that such delay violated the express provisions of CPL 700.50 (subd. 2).
CPL 700.50 (subd. 2) provides as follows: “ Immediately upon the expiration of the period of an eavesdropping warrant, the recordings of communications made pursuant to subdivision three of section 700.35 must be made available to the issuing justice and sealed under Ms directions.” (Emphasis supplied.)
Parenthetically, it may be noted that Judge Provenzano’s order and warrant of August 28, 1973 authorized the District Attorney of Monroe County and his specified agents, Detectives Robert J. Wiesner and Daniel P. Brennan, “ to eavesdrop on, listen to, overhear, record and make copies of any and all tele *82 phone communications * * * made to and from the subject telephone ’ ’, and among other things, fixed termination of the interception period on the 30th day from the date of installation. The order also directed that ‘ ‘ such eavesdropping must terminate upon attainment of the authorized objective, or in any event within thirty days.”
The uncontradicted evidence indicates that, after cessation of surveillance on Thursday (Sept. 6, 1973), Detective Wiesner replayed the last tape in order to log the destination of outgoing calls and, simultaneously, made a duplicate copy of the last recording. He testified that he then locked the original and the duplicate recording either in his own locker, or in the special investigation section’s safe file.
On the following day, Friday (Sept. 7, 1973) on-site surveillance of the subject residence (193 Rutgers St.) failed to establish the presence of the defendant, Andrew Blanda, the person named in the warrant. No interception was made. Detective Wiesner testified that on that date (Sept. 7, 1973) the District Attorney’s office, in accordance with statutory mandate (GPL 700.50, subd. 3) notified certain persons, including the subject (Blanda) of the fact and date of the issuance of a prior warrant and order for eavesdropping interception of communications over certain other telephones. Under these circumstances, according to Detective Wiesner, the special criminal investigation section concluded that the required 90-day notification would alert the defendant (Blanda) and compromise further surveillance of the subject telephone. Therefore, the commanddescision was made, in accordance with Judge Provenzano’s warrant and order, to terminate the eavesdropping and surveillance of subject’s telephone “ upon attainment of the authorized objective.”
Detective Wiesner testified that he was unable to reach Judge Provehzano on Friday, September 7, 1973. This, testimony is credible in the light of testimony by Mr. Justice Provenzano to the effect that he had received a call on the morning of Friday, September 7, 1973 from the office of the Governor informing him of his appointment to the Supreme Court. Conceivably, it would have been difficult to reach the ‘ ‘ issuing justice ’ ’ following the Governor’s call. In any event, Detective Wiesner did not work on Saturday and Sunday, September 8 and 9.
On Monday, September 10, 1973, Detective Wiesner prepared his report and affidavit of termination of the eavesdropping warrant and delivered the same together with the logs and the recordings to the “ issuing justice ”.
*83 Under the circumstances above-enumerated and upon all the evidence the court is satisfied that the police officers’ delivery of the recordings on Monday, September 10, 1973 fully complied with the statutory provisions requiring “ immediate ” delivery of the product of the warrant. (GPL 700.50, subd. 2; see, also, United States v. Poeta, 455 F. 2d 117.)
The word “ immediately ” must be liberally construed.[1] The word “ immediately ” does not mean instantaneously. It does mean promptly, within a reasonable time, or with reasonable diligence, dependent upon the circumstances in each case. The credible evidence here suggests no unreasonable delay. The circumstances surrounding the termination of the telephonic interceptions on Thursday, September 6, 1973, the explanation of Mr. Justice Provenzano’s unavailability on Friday, September 7, 1973, and the intervening weekend are all exigent and reasonable circumstances explaining the delivery of the product of the warrant on Monday, September 10,1973. Absolute immediacy of delivery is hardly a sine qua non of proof of compliance with the statute.
"While immediate delivery of the recordings (to the issuing Justice) is one of many safeguards designed to lessen the potential for tampering, nevertheless, even instantaneous delivery, upon shutdown of the eavesdropping operations, will never suffice to guarantee the absolute security of all recordings taken during the interception period. Nor would instant delivery upon termination of an eavesdropping operation necessarily guarantee a perfect and unbroken chain of custody. Resolution of both issues would require other safeguards and other proof.
The court is compelled to conclude under the circumstances here that delivery on Monday (Sept. 10,1973) of the tape recordings, the logs of the telephone calls received and the officers’ report of termination of the telephonic interceptions to the Judge who had issued the eavesdropping warrant was made immediately with prompt and due diligence and with commendable and full compliance with the mandate of the statute. (United States v. Poeta, 455 F. 2d 117, supra.)
*84 B. CUSTODIAL CABE
As a secondary branch of his motion to suppress the recordings, the defendant contends the People have failed to prove that the tape recordings were properly secured by the police from the date on which the wiretap was first made and interceptions commenced (Au'g. 29, 1973 at 5:30 p.m.) to the date when dll intercepted recording's were delivered to the issuing ■Justice (Sept. 10, 1973).
The defendant argues there is no evidence, other than the testimony of Detective Wiesner, that during this period the recordings were properly sealed and no proof that the recordings were, in fact, locked in the safe file of the special investigation section, or on occasion, in Detective Wiesner’s locker.
The defendant cites People v. Nicoletti (34 N Y 2d 249, 253) for the threefold proposition that the sealing requirement set forth in the statute is designed “ to prevent tampering, alterations or editing; to aid in establishing the chain of custody; and to protect the confidentiality of the tapes.” Defendant also points to CPL 700.55 (subd. 2) which provides: “ Custody of the recordings made pursuant to subdivision three of section 700.35 may be wherever the justice orders.” Thus, the defendant raises novel questions concerning the parameters of both the statute and Nicoletti.
It is true Nicoletti stands for the proposition that the sealing requirement “ is to be strictly construed * * * to prevent tampering ” (People v. Nicoletti, supra, p. 253). However, it is clear the decision did not address itself to the interception period, i.e., the period during which interceptions were made and before delivery of the product of such interceptions to the issuing Justice. To the contrary, Nicoletti dealt solely with that point in time (after termination of the eavesdropping operations) when the recordings were delivered to the Justice who had issued the warrant.
The Nicoletti court emphasized that in that instance the tape recordings obtained by the police never were presented to the issuing Justice for sealing. None of them were, in fact, ever sealed. As a matter of fact, the tape recordings of the intercepted conversations were kept in a locked foot locker for more than a month following termination of the interceptions and only then were delivered to the District Attorney’s office, not to the issuing Justice.
Quoting the then applicable statute (Code Crim. Pro., § 882, subd. 2) the court noted that “ Immediately upon expiration *85 of the warrant, recordings of communications 1 shall be made available to the issuing justice and sealed under his directions \” (People v. Nicoletti, supra, p. 252.) The court further noted that Federal law contains similar provisions (U. S. Code, tit. 18, § 2518, subd. [8], par. [a]). Significantly, the latter statute is virtually synonymous with the statutory provisions applicable in the instant case (CPL 700.50, subd. 2; CPL 700.65, subd. 3).
The Nicoletti court concerned itself only with that point in time defined as “ immediately uppn expiration of the warrant ” (supra, p. 252; emphasis added) at which point, sealing of the recorded communications would, in the words of the court “ While not foolproof * * * reduces the risk of manipulation to tolerable limits.” (Supra, p. 253.) Thus, while the court emphasized its great concern with the “ potential for abuse ”, it confined itself, at least as far as the Nicoletti facts were concerned, to a consideration of that point when the tapes were to be delivered to the issuing Justice. The court simply said that at such point sealing is mandatory.
Similarly, the statute in its directory provisions specifies sealing “ Immediately upon the expiration of the period of eavesdropping warrant ”, at which point, the recordings of communications “ must be made available to the issuing justice and sealed under his directions.” (CPL 700.50, subd. 2.) However, the statute is virtually silent as to the custodial care, if any, to be imposed upon the police during the previous interception period. CPL 700.35 (subd. 3) broadly directs that “ The recording of the contents of any such communication must be done in such way as will protect the recording from editing or other alterations.” CPL 700.55 (subd. 2), wherein it is provided that custody of the tapes “ may be wherever the justice orders ”, deals with post-delivery custody and care of the recordings and is of no avail to the defendant upon the instant motion.
It may well be that the Legislature should address itself to the problems inherent in • predelivery custodial care of such tape recordings. But, in any event, the careful Justice should make appropriate provisions upon issuing his warrant for the safekeeping of all recordings intercepted during* the ongoing period of eavesdropping interception. (CPL 700.35, subd. 3.) Such care would also seem to be in keeping with the discretionary provisions requiring reports concerning achievement of *86 the authorized objective and need, if any, for continued eavesdropping.[2]
Predelivery care and keeping of recordings of intercepted communications will also fall within the ambit of well-established rules of evidence governing the “ chain of custody ” (so-called).
It has long been the law, as to demonstrative evidence (and recordings of telephonic communications fall within this category), that the People bear the burden of: (1) proving the chain of custody of such evidence; and (2) proving that it has not been tampered with. (People v. Flanigan, 174 N. Y. 356; People v. Connelly, 35 N Y 2d 171; United States v. Clark, 425 F. 2d 827; United States v. Hall, 198 F. 2d 726; also, see, 30 Am Jur. 2d, Evidence, § 1172; 53 Am. Jur., Trial, § 711; 32 C. J. S., Evidence, § 607, p. 762.)
Generally, practical considerations and reasonable standards of conduct, such as labeling, initialling, cataloging, and safekeeping (People v. Jamison, 29 A D 2d 973, People v. Peluso, 29 N Y 2d 605; People v. Herman, 8 Misc 2d 991; People v. Mirenda, 23 N Y 2d 439) will suffice to establish the admissibility of such evidence. Where, however, the evidence, such as the recordings in the instant case, lend themselves to “ diaboEcal fakery ” (Lopez v. United States, 373 U. S. 427, 468 [Brenuau, J., dissenting]) the standards of ultimate admissibility will be correspondingly more stringent.
As Judge Wachtler pointed out in People v. Connelly (35 N Y 2d 171, 174, supra), “ When the evidence itself is not patently identifiable or is capable of being replaced or altered, admissibility generally requires that all those who have handled the item ‘ identify it and testify to its custody and unchanged condition ’ ” (citing People v. Sansalone, 208 Misc. 491, 493).
In the instant case, defendant seeks to cast suspicion on the integrity of the recordings by reason of the fact that during the interception period (from Aug. 28, 1973 to 'Sept. 10, 1973) the recordings made each day were locked at night in a safe file in the office of the supervisor of the special criminal investigation section, or in officer Wiesner’s locker, and may have been accessible to others. (Cf. People v. Pfendler, 29 Misc 2d 339; People v. Nicoletti, 34 N Y 2d 249, supra.)
*87 The defendant’s suspicion ignores the uncontradioted testimony of Detective Wiesner. He testified that, not only were the daily tape recordings maintained each night under lock and key, but that he, personally, placed, them in their separate plastic containers on each occasion, and properly labeled and initialled the same. Wiesner also testified that he taped all the containers together, either with ‘1 evidence ’ ’ tape orx ‘ adhesive ” tape before locking them in the safe file, or in his own locker. It is of more than passing significance that, when the box containing the tape recordings was opened in the presence of the court, Detective Wiesner pointed out and identified the residue'of adhesive substance clinging to the edges of the plastic tape containers. Suffice it to say, mere suspicion will not suffice to raise a reasonable inference.
This court concludes that no reasonable inference of a gap or break in the chain of custody may be drawn from the foregoing evidence. The court is satisfied that the custodial care of the tape recordings during the period of interception (Aug. 28,1973 to Sept. 10,1973) fully complied with 'reasonable police procedures — and to such commendable extent that the potential for tampering was nil.
C. SEALING
Finally, the defendant urges that, upon receipt of the recordings, the issuing Justice failed to seal the evidence as mandated by statute (CPL 700.50, subd. 2; CPL 700.65, subd. 3).
While conceding that then County Judge Peovenzano followed the Niaoletti rationale in principle (before publication of that decision) by sealing[3] the cardboard box containing the tape recordings with a clear plastic scotch tape, the defendant, nevertheless, urges that the Judge failed to issue a written order: (1) directing such sealing; and (2) directing the .safekeeping of the sealed box containing the tape recordings by the Court Clerk. The defendant urges that the statutory provisions (CPL 700.50, subd. 2; CPL 700.65, subd. 3) require more than a ministerial act. Specifically, it is his contention that a written order of the Judge as to sealing, and place of custody Is mandatory.
Suffice it to say, the statute does not .specify a “ written order ”. Perhaps it should. But, again, the defendant’s contentions ignore the uncontradicted testimony of Judge *88 Provenzano in which he reviewed his acts and his oral order upon receipt of the tape recordings.
The Judge testified that he and his secretary (Ms. Grace Phelps) placed the numbered containers of tape recordings in a cardboard box (12 inches by 9% inches by 8 inches); that he then wrote in his own hand on the top- of the box the following: “Received — 9-10-73. From Robert Wiesner 9-10-73 and Daniel Brennan 220 Hall of Justice ” and signed his name, ‘ ‘ Edward 0. Provenzano. ’ ’ Thereupon, according to his uncontradicted testimony, he personally encircled the box and its cover with multiple bands of one-half inch clear plastic tape. These continuous strips of clear plastic tape effectively .sealed the cover of the box to the body of the box itself. A triple strand of clear scotch tape covered the Judge’s signature. Upon the plenary hearing he testified that the box, the scotch taping and his writing were in exactly the same condition as on the date he had received, signed for and sealed the same. He also testified upon opening the box (during the hearing) that the contents thereof were in the same pristine condition as when he had personally placed the contents therein. Thereafter, he ordered the Honorable Howard Eichorn, Deputy Clerk of the County of Monroe and Clerk of the County Court of the County of Monroe, to place the tape recordings in the Court Clerk’s large safe located in the office of the Clerk in the Hall of Justice, Rochester, New York. It was the testimony of the Court Clerk (Eichorn) that the exhibit remained in his safe until the date of the hearing herein.
In passing, it may be noted that it was the testimony of the Court Clerk (Eichorn) that he and at least four Deputy Clerks had access during working hours to the Court Clerk’s safe. However, he testified that the tape recordings had not been removed by any other person, that the exhibit was in exactly the same condition as on the date he had received the same from Judge Provenzano and that it remained the same upon the date of the hearing. As noted above, mere accessibility of others to the evidence in question will not suffice to compromise the chain of custody. (People v. Herman, 8 Misc 2d 991, supra; People v. Connelly, 35 N Y 2d 171, supra.)
From the foregoing evidence this court concludes that Judge Provenzano complied in all respects with the mandates of the statute and with the spirit and rationale enunciated in People v. Nicoletti, 34 N Y 2d 249, supra). (See, also, People v. Connelly, supra; United States v. Poeta, 455 F. 2d 117, supra.)
Accordingly, defendant’s motion to suppress the tape recordings is hereby denied.

. Section 5.00 of the Penal Law provides: ‘ ‘The general rule that a penal statute is to be strictly construed does not apply to this chapter, but the provisions herein must be construed according to the fair import of their terms to promote justice and effect the object of the law.” (Cf., also, McKinney’s Cons. Laws of N. Y., Book 1, Statutes, §§ 276, 325.)

. CPL 700.50 (subd. 1) provides: “An eavesdropping warrant may require reports to be made to the issuing justice showing what progress has been made toward achievement of the authorized objective and the need for continued eavesdropping. Such report shall be made at such intervals as the justice may require.”

. Sealed — “ fastened up in any manner so as to be closed against inspection of the contents.” (Black’s Law Dictionary [4th ed., 1951], p. 1517.)