Walter T. Gorman, J.
During 1973 and 1974 the New York City Police Department and the Office of Prosecution of the Special Narcotics Parts conducted an extensive narcotics investigation. Six eavesdropping warrants were obtained and executed. The intercepted communications filled 103 reels. Upon receiving the evidence contained therein, the Grand Jury handed up a number of indictments charging more than half a dozen defendants with conspiracy in the first degree. This court holds that the failure to comply with the statutory sealing mandate requires the suppression of the recordings and any evidence derived therefrom.
On December 12, 1973 a warrant directed at Joseph Duffy was signed and executed. Based in part upon communications received thereunder, a second warrant covering a different telephone number used by "Salena” was procured. Four additional wiretap orders — each prompted by the fruits of previous surveillance — followed. Three of them named defendant Grace Simmons, two also included defendant James Simmons, and one designated defendant Albert Morris as the target.
The first warrant, which is not a subject of this decision, expired on January 11, 1974. The remaining warrants expired on February 9, 1974, February 28, 1974, March 30, 1974 (two warrants) and May 8, 1974. No warrant was in effect from April 1 through April 8, 1974. All- of the intercepted conversations were sealed 21 days after the expiration of the last order on May 29, 1974.
*751 The defendants brought motions to controvert the warrants and between June 2 and June 16, 1975 a hearing was held on the various issues presented. On the last day, counsel for defendant James Simmons raised the sealing question. The court reserved decision.
The court reopened the hearing on October 20, 1975 to receive evidence on the reason for the delay in sealing and the security employed in safeguarding the recordings. Scheduling difficulties had precluded an earlier hearing date. The preparation of a memorandum of law by each side consumed additional time. On December 5, 1975, the court announced its decision and that it would subsequently file a formal opinion.
The sealing requirement is purely statutory in nature. CPL 700.50 (subd 2) provides: "Immediately upon the expiration of the period of an eavesdropping warrant, the recordings of communications made pursuant to subdivision three of section 700.35 must be made available to the issuing justice and sealed under his directions.”
CPL 700.65 (subd 3) reads as follows: "Any person who has received, by any means authorized by this article, any information concerning a communication, or evidence derived therefrom, intercepted in accordance with the provisions of this article, may disclose the contents of that communication or such derivative evidence while giving testimony under oath in any criminal proceeding in any court or in any grand jury proceeding; provided, however, that the presence of the seal provided for by subdivision two of section 700.50, or a satisfactory explanation of the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any communication or evidence derived therefrom.”
These sections restate the provisions of sections 822 and 825 of the former Code of Criminal Procedure. That statute, in turn, was basically a carbon copy of segments of the 1968 Federal Crime Control Act (see US Code, tit 18, § 2518, subd [8], par [a]).
The defendants do not suggest that the tapes were altered, nor does the court see any evidence thereof. Testimony at the hearing revealed that the pre-sealing storage arrangements and security were adequate. The argument that no delay exists here has not been advanced. However, the length and reasonableness of the delay are in dispute.
The People aver that the duty to seal the recordings under *752 all of the warrants did not arise before the expiration of the final order on May 8, 1974. This court chooses to treat each order individually. The five orders constituting the subject of this proceeding named four people, expired on fopr different dates, and covered three telephone numbers at three separate locations. Although part of a single investigation from the District Attorney’s point of view, the warrants were otherwise unrelated.
Unlike paragraph (a) of subdivision (8) of section 2518 of title 18 of the United States Code, CPL 700.50 (subd 2) speaks only of the expiration of an eavesdropping warrant, and not of "extensions thereof,” in outlining the sealing requirement. The inclusion of the phrase "or expiration of an extension order” in CPL 700.50 (subd 3), which concerns itself with the time within which written notice of the warrant’s issuance must be served on the person named therein, reinforces the theory that the Legislature intended to have each warrant treated individually for sealing purposes. It also renders the sealing requirement more meaningful.
Accordingly, the delay amounts to the number of days between the expiration of the respective warrants and May 29, 1974 and was as follows: 109 days on the "Salena” warrant which expired on February 9, 1974; 90 days on the Grace Simmons warrant which expired on February 28, 1974; 60 days on the Albert Morris and Grace Simmons-James Simmons warrants, both of which expired on March 30, 1974; and 21 days on the Grace Simmons-James Simmons warrant which expired on May 8, 1974.
In view of the statutory exception that a satisfactory explanation excuses the absence of a seal, logic dictates that a sufficient reason for the delay in sealing would likewise permit their use at trial (United States v Capra, 501 F2d 267, 277, n 10, cert den 420 US 990; United States v Poeta, 455 F2d 117, 122, cert den 406 US 948; People v Guenther, 81 Misc 2d 258, 260).
Here, the excuses tendered for the delay consist of the pendency of Grand Jury proceedings; the need to prepare inventories, duplicate recordings and transcripts; the statutory requirement that reports be completed; and the complexity and on-going nature of the investigation. These reasons are unacceptable.
Evidence at the hearing showed that none of the tapes was taken from storage until May 29, 1974 when they were all *753 sealed. Yet, indictments were handed up on May 1, 1974 and June 5, 1974 (the second superseding the first). The conclusion drawn is that the recordings were not essential to the Grand Jury presentation. If the tapes were needed to obtain an indictment, an order unsealing the relevant tapes could have been procured. An alternate method of procedure would have been to use two machines to wiretap and thereby produce two original recordings.
The urgency of preparing duplicate recordings is belied by the testimony that only two tapes were copied in May, 1974. A better procedure would have been to duplicate each tape as it was completed (see People v Blanda, 80 Misc 2d 79, 80). Likewise, for the preparation of transcripts, inventories and reports "duplicate recordings could and should have been made and the originals preserved under seal” (People v Nicoletti, 34 NY2d 249, 253; see also CPL 700.55, subd 2; US Code, tit 18, § 2518, subd [8], par [a]). Furthermore, this court cannot find any correlation between the delay in sealing and the complexity or stage of the underlying investigation.
At the hearing the People sought to establish that the issuing Justice, now deceased, condoned and directed the maintenance and time of the sealing of the tapes, which were always "available” to him. Such evidence presumably was offered to show a satisfactory explanation for the late sealing. The Court of Appeals rejected this argument where no seal was obtained and stated: "That the issuing Justice was advised of the custody arrangements will not suffice. While he may have tacitly approved them, the fact remains that the recordings were not sealed” (People v Nicoletti, supra, p 253). Judicial acquiescence, even if established, to noncompliance with the statute in question does not alter the prosecutor’s duty to adhere to the same. To hold otherwise would constitute a mockery of the provision and an invasion of the legislative domain.
Finding that the delay in sealing was not excusable, the court must now decide whether suppression is mandated.
With one exception (United States v Falcone, 505 F2d 478, cert den 420 US 955), the courts have equated a delay in sealing with no seal at all and have forgiven the delay only upon a satisfactory explanation therefor (United States v Capra, supra; United States v Poeta, supra; People v Carter, 81 Misc 2d 345, 348; People v Guenther, supra; People v Blanda, supra, p 83).
*754 A reading of the relevant sections of the Criminal Procedure Law in conjunction leads to the conclusion that in referring to the absence of a seal CPL 700.65 (subd 3) speaks of the absence of a seal affixed in accordance with the demands of CPL 700.50 (subd 2), and not merely of the failure to ever seal the tapes. A contrary interpretation would render the enactment meaningless. Here, for example, the delays of 21 to 109 days were tantamount to no sealing at all.
To excuse an improperly explained delay in sealing would be to frustrate the legislative intent "to prevent tampering, alterations or editing”. "Through skillful editorial manipulation, alterations may be undetectable, or, if detectable at all, then only by the most sophisticated devices and techniques involving time-consuming and expensive analysis by technical experts. While not foolproof, sealing reduces the risk of such manipulation to tolerable limits”. In Nicoletti, the court carefully pointed out that no indication of any alterations in the tapes appeared, but that "[i]t is the potential for such abuse to which we address ourselves”. (People v Nicoletti, supra, p 253, n.)
Since the absence of a seal statutorily precludes introduction of tapes into evidence and our State’s highest court ordered suppression in the absence of a seal, this court is setting no precedent and has no alternative in barring the use of recordings at trial.
The opinion of the Third Circuit in United States v Falcone (supra) that a delay in sealing need not be fatal if the integrity of the tapes remains unblemished cannot be reconciled with either a logical explanation of the relevant statute or with Nicoletti. This court finds the dissenting opinion in the Falcone case, which, of course, is in no way controlling in New York, far more persuasive than the majority’s reasoning.
The People cite United States v Chavez (416 US 562) in support of their theory that a procedural error need not result in suppression. That case is inapposite. As the United States Supreme Court pointed out (p 570), it is necessary to examine the "statutory scheme” to ascertain the Congressional intention.
In Chavez the application and court order incorrectly identified the authorizing official, although the proper official actually authorized the application. The court concluded (p 572) *755 that the purpose of the statute was to fix responsibility and that objective had not been stymied. On the other hand, the legislative desire to insure the integrity of the tapes and limit the potential for abuse is automatically thwarted by a delay in sealing — not a factor in Chavez (cf. People v Hueston, 34 NY2d 116, 120; People v Di Lorenzo, 69 Misc 2d 645, 652).
Finally, the People argue that Nicoletti should not be applied retroactively. The sealing herein preceded that decision by one week.
The Nicoletti court did not make new law. It merely applied a statute unambiguous on its face. In so doing, the court held as matter of law that the absence of a seal was "insufficiently explained” (People v Nicoletti, supra, p 251).
Only one case discussing sealing and cited by the People as the source of their reliance upon a pre-existing standard was decided before May 29, 1974. As was noted above, in that case the court treated a delay in sealing as no sealing and found a satisfactory explanation therefor (United States v Poeta, supra). This court sees no dependence upon prior interpretations of the law, but rather a disregard for the statute.
In addition, a delay in sealing can affect guilt or innocence —a factor in assessing the retroactivity of a decision — as a comparison with other areas of the law shows. For example, even if a search was improper, its illegality does not determine whether contraband was in the searched person’s possession. Similarly, the failure to give Miranda warnings does not cast suspicion on the truthfulness of an admission of guilt. The integrity of a recording, however, can be crucial to guilt or innocence. For, if a tape has been doctored, the proof at trial has been affected.
In view of the court’s finding and ruling on the sealing issue, it is unnecessary to discuss the other contentions raised.
For the foregoing reasons the motion of defendants to controvert the eavesdropping warrants issued January 30, 1974, March 1, 1974 (two warrants) and April 9, 1974 is granted and all communications and evidence derived therefrom are suppressed. Also, as to the defendant Grace Simmons, her motion to controvert the eavesdropping warrant issued January 11, 1974 is granted and all communications and evidence derived therefrom are suppressed.