THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ARTHUR GLASSER, Appellant.

Second Department, July 8, 1977

Zerin & Cooper (Jay M. Zerin of counsel), for appellant.

Eugene Gold, District Attorney (Alan D. Rubinstein of counsel), for respondent.

SHAPIRO, J. The defendant appeals from a judgment of the Supreme Court, Kings County, rendered February 24, 1976, convicting him, upon a guilty plea, of attempted perjury in the first degree, and sentencing him to a prison term of one year. We reverse and dismiss the indictment.

The sole issue here relates to the denial of the defendant's motion to suppress certain eavesdropping evidence. More particularly, the defendant claims that the sealing of the taped conversations about 12 days after the expiration of the warrant, *as extended,* and about 41 days after the expiration of the original warrant, does not constitute the immediate sealing required by CPL 700.50 (subd 2); that the warrant application did not establish that normal investigative procedures had been tried and had failed, or that they reasonably appeared unlikely to succeed (see CPL 700.15, subd 4); and that the absence from the application of a full and complete statement of the facts as respects the normal investigative procedures employed not only violated CPL 700.20 (subd 2, par [d]), but operated to mislead the court, thus constituting a fraud upon it.

The only contention meriting discussion is the first claim— the delay in sealing—and the answer to that question depends upon whether the sealing requirement comes into play at the termination of the original eavesdropping authorization or only after termination of the last extension of the warrant. If the former, sealing would have been delayed about 41 days as the original warrant expired February 22, 1974.

Section 2518 (subd [8], par [a]) of title 18 of the United States Code provides for the sealing of wiretaps "[i]mmediately upon the expiration of the period of the order, *or extensions thereof*" (emphasis supplied). On the other hand CPL 700.50 (subd 2), which was adopted after the enactment of the Federal statute, states that sealing is required "[i]mmediately upon the expiration of the period of an eavesdropping warrant".

It thus seems clear that by omitting to include the phrase "or extensions thereof", the New York Legislature mandated sealing upon the expiration of each original and extension order *(People v Simmons,* 84 Misc 2d 749, resettled 86 Misc 2d 737, affd 54 AD2d 624). I am fortified in my conclusion in that regard by the fact that in two other instances of requirements regarding notice, the Legislature followed the language of the Federal statute almost verbatim. Thus, in connection with the provision for giving written notice to the person under electronic surveillance, the Federal statute requires that it be given "[w]ithin a reasonable time but not later than ninety days after * * * termination of the period of an order *or extensions thereof*" (U S Code, tit 18, § 2518, subd [8], par [d]). Its provisions are tracked by CPL 700.50 (subd 3)' which requires that such notice be given "[w]ithin a reasonable time, but in no case later than ninety days after termination of an eavesdropping warrant, *or expiration of an extension order*". (emphasis supplied).

Under the Federal law (US Code, tit 18, § 2519, subd [1]), reports to the Administrative Office of the United States Courts must be made by the Judge issuing the wiretap order "[w]ithin thirty days after the expiration of an order *(or each extension thereof)".* Again tracking the Federal statute, CPL 700.60 (subd 1) provides for the filing of such reports "[w]ithin thirty days after the termination of an eavesdropping warrant *or the expiration of an extension order"* (emphasis supplied).

CPL 700.40 specifically provides that extension orders may be applied for "[a]t any time prior to the expiration of an eavesdropping warrant", while the Federal law merely states that such extensions may be granted (US Code, tit 18, § 2518, subd [5]). However, in both cases, the extension application must conform to the statutory provisions governing original applications so that each extension order must stand or fall on its own merits. Also, neither the original eavesdropping war-

rant nor any extension order may authorize a period of interception exceeding 30 days. Thus, it cannot be concluded, as the District Attorney argues, that the original order and any extension order, in effect, merge into one order within the meaning of the sealing requirement, but not within the meaning of the other statutory provisions. Nor is a different result compelled by the fact that an extension order, issued under New York law prior to the expiration of the original warrant, will be treated as extending an eavesdropping "authorization" within the meaning of CPL 700.35 (subd 2), which requires physical removal or permanent deactivation of eavesdropping devices upon termination of the authorization in the warrant. Clearly, it was to avoid the necessity of removing and then reinstalling such devices that the Legislature directed that extension orders be applied for prior to the expiration of the original warrants.

Then, too, the considerations underlying the timing of various statutory requirements are different. In the case of written notification of eavesdropping to the person named in the warrant, for example, as well as the situation of removing eavesdropping devices, considerations of secrecy are uppermost. Notice of eavesdropping to the person whose telephone was being tapped, or physical entry upon the premises under surveillance to remove devices upon expiration of the original warrant, notwithstanding the existence of an extension order, might very likely "blow" the entire investigation. In the case of the sealing requirement, on the other hand, the paramount consideration is the prevention of the abuse of wiretap recordings, for as the court said in *People v Sher* (38 NY2d 600, 604): "Sealing reduces the risk that skillful editors might make alterations that are undetectable without the use of technical experts and sophisticated, expensive electronic equipment."

Thus, CPL 700.35 (subd 3) provides that the contents of any intercepted communication must, if possible, be recorded on tape or wire or other comparable device and that the recording must be done in such manner as will protect it from editing or other alteration. Then, "[i]mmediately upon the expiration of the period of an eavesdropping warrant, the recordings * * * must be made available to the issuing justice and sealed under his directions" (CPL 700.50, subd 2). The presence of the seal, or a satisfactory explanation for its absence, is a prerequisite for the use or disclosure of the recorded conversations, or evidence derived therefrom (CPL

700.65, subd 3). The sealing requirement must, therefore, be strictly construed (*People v Nicoletti,* 34 NY2d 249, 253).

Recognizing the underlying rationale for the sealing requirement, I see no viable distinction between the periods before and after the expiration of extension orders with respect to the risk to be avoided. Depending upon the nature of the underlying investigation, electronic surveillance authorization may be successively extended over a period of many months. The risk of alteration is not demonstrably less during such a period of extended surveillance than it is after the last extension has finally expired but before the recordings are sealed. Further, duplicate recordings can be timely made as the investigation progresses and, since applications for extension orders must be accompanied by a statement setting forth the results thus far obtained from the interception (CPL 700.40), law enforcement personnel should have sufficient time in which to carefully assess the results of the initial period of interception prior to the expiration of the original warrant. The so-called concept of continuing judicial control during a period of extended surveillance, relied upon in *People v Rosenberg* (NYLJ, Oct. 20, 1976, p 13, col 1) as justifying application of the sealing requirement only after extension orders have expired, is, in practice, more fiction that fact.

The People's reliance upon *United States v Falcone* (505 F2d 478, cert den 420 US 955) is misplaced for two reasons.[1] In the first place that case dealt with the Federal statute which, as we have shown, permits sealing after the expiration of the original order "or extensions thereof", while our statute contains no such "extension" provision and, in the second place, the court there said (p 484): "Therefore, all we hold is that where the trial court has found that the integrity of the tapes is pure, a delay in sealing the tapes is not, in and of itself, sufficient reason to suppress the evidence obtained therefrom."

---

1. On April 27, 1977, the day before the instant appeal was argued in this court, the United States Court of Appeals for the Second Circuit decided *United States v Fury* (554 F2d 522). Understandably, therefore, its effect was not briefed here. In that case the court concluded (p 533) that while the issue was "troublesome"—"[s]ince the language of the statutes, the apparently prevailing practice, and what case law there is, supports the position that the government need seal the tapes only after the termination of the extensions of the original order, that is the position we adopt." In reaching that determination the court apparently did not mention and apparently gave no heed to the difference between the Federal statutes and our statutes. For the reasons set forth in our opinion, we differ with the conclusion of the Court of Appeals in that case.

But that statement does not represent New York law (see *People v Nicoletti,* 34 NY2d 249, *supra; People v Sher,* 38 NY2d 600, *supra).* In the *Sher* case the Court of Appeals said (pp 603-605):

"In *People v Nicoletti* (34 NY2d 249, 253), we held that the sealing requirement must be strictly construed. * * * In the absence of compliance, the State officials lack authority to wiretap, and any interceptions they make are unlawful, and any evidence derived from the wiretap is inadmissible. (US Code, tit 18, § 2515.)

"The People contend, on this appeal, that the absence of the seals is sufficiently explained by the need to use the tapes to prepare for trial. Bearing in mind the purpose and intent of the sealing requirement, we conclude that this excuse is unsatisfactory. * * *

"In our view, the failure of the prosecution to obtain judicial approval for the unsealing of the tapes and the absence of judicial supervision over the unsealing process violated the procedure clearly mandated by the Federal and State statutes. *As in People v Nicoletti* (34 NY2d 249, 253, *supra) no claim is made, nor is there any indication that the tape recordings involved were in any way altered. 'It is the potential for such abuse to which we address ourselves'* (p 253). Sealing reduces the risk that skillful editors might make alterations that are undetectable without the use of technical experts and sophisticated, expensive electronic equipment. Moreover, the requirement also assists in establishing a chain of custody and serves to protect the confidentiality of the tapes.

"We do not doubt that the prosecution had a valid purpose in opening up the tapes in order to use them for trial preparation. However, this purpose does not authorize the police or the District Attorney, on their own, to unseal recordings that should be regarded as confidential court records. Duplicate tapes, as authorized by the court, could have and should have been made and there would have been no need to disturb the sanctity of the originals. (See *People v Nicoletti, supra,* pp 253-254.) Alternatively, if there was a remaining need to unseal the originals, judicial permission and supervision should have been obtained prior to the unsealing.

"The sealing requirement was designed to prevent the abuse of wiretap recordings. To that end, as we held in *Nicoletti,* the requirement must be strictly construed. The burden is on the prosecution to establish due compliance with the statutory

procedures. We adhere to the rule announced in *Nicoletti"* (emphasis supplied).

We have considered the other claims urged by the defendant and find them to lack merit. We hold, however, that a delay of about 41 days in the sealing of the tapes cannot, as a matter of law, be justified.[2]

Accordingly, the judgment of conviction should be reversed and the indictment dismissed.

MARTUSCELLO, J. P., LATHAM, HAWKINS and O'CONNOR, JJ., concur.

Judgment of the Supreme Court, Kings County, rendered February 24, 1976, reversed, on the law, motion to suppress evidence granted, and indictment dismissed. No fact issues have been presented for review.

---

2. Relatively short delays have received disparate treatment by trial courts. For example, in *People v Blanda* (80 Misc 2d 79) a four-day delay, from a Friday to a Monday, was held excusable where the detective could not reach the issuing Justice on Friday, the latter having been appointed that day to a higher court, and the detective did not work that weekend. However, in *People v Guenther* (81 Misc 2d 258) a seven-day delay, which included a three-day holiday weekend, was held inexcusable on the ground that law enforcement does not cease on weekends and holidays and that the tapes had been improperly secured and placed in a locker. In *People v Carter* (81 Misc 2d 345) an eight-day delay was found reasonably excused without any detailed examination of the facts, as was a 12-day delay in *People v Rosenberg* *(supra).* In *People v Washington* (55 AD2d 609), decided by this court on December 6, 1976, the question of whether the sealing requirement ran from the time of the expiration of each order or from the time of the last extension was not briefed by either side and was not considered by this court. To the extent that the language there used is susceptible of an interpretation that the pivotal date is the date of the last extension, it is disavowed.