THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANDY PECORARO, Appellant.

Second Department, July 8, 1977

*Fischetti & Shargel (Ronald P. Fischetti* and *Jay M. Zerin* of counsel), for appellant.

*Eugene Gold, District Attorney (Alan D. Rubinstein* of counsel), for respondent.

TITONE, J. The defendant appeals from a judgment of the Supreme Court, Kings County, rendered November 30, 1976, convicting him, upon a plea of guilty, of the crime of perjury in the first degree, and sentencing him to five years' probation. The issue before this court relates to the denial of the defendant's motion to suppress certain eavesdropping evidence. The defendant's claim that the sealing of taped conversations was not "immediate", as required by CPL 700.50 (subd 2), is raised by alternative arguments. One of his contentions is that there was a statutory duty upon the People to seal the tapes at the conclusion of the initial 30-day period set forth in the eavesdropping warrant itself, and again at the expiration of the 30-day period set forth in each of the three extension orders. In his alternate argument, the defendant asserts that (assuming sealing is required only after the expiration of the last extension order) an unexplained seven-day delay between the expiration of the last extension order and the sealing requires suppression of the tapes in dispute.

### THE FACTS

In September, 1972 an investigation was commenced into unlawful gambling in Suffolk County. Through the use of court ordered wiretaps, leads were furnished which culminated in a series of wiretaps being installed at various locations in Kings and Queens Counties. As a result of this electronic surveillance, approximately 500 individuals, including the defendant, were subpoenaed to appear before a Kings County Grand Jury. Thereafter approximately 150 men and women were indicted for various crimes, including gambling and perjury.

Subsequently, a number of the defendants, although named in separate indictments, joined for the purpose of an evidentiary hearing challenging the legality of the wiretaps. The challenge which concerns this appeal is the claim that certain of the tapes should have been suppressed on the ground that they were not timely sealed pursuant to CPL 700.50 (subd 2). The hearing before Criminal Term involved about 31 wiretap orders, pursuant to which thousands of hours of conversations among hundreds of individuals over a period extending more than one year were monitored.

The wiretap orders were divided into 13 plants. Each plant represented a separate telephone number and location. A number of extensions of the original wiretap orders were obtained for several· of the plants (see CPL 700.40). The wiretap relevant to the defendant was designated plant 7. The original order creating plant 7 was signed on October 19, 1973. Renewals of that order were obtained on November 17, 1973, December 18, 1973 and January 17, 1974, respectively. The expiration date of the last extension order was February 15, 1974. All of the tapes from plant 7 were sealed on February 22, 1974, seven days after the expiration of the last renewal order, and 97 days after the conclusion of the initial period set forth in the warrant itself.

### THE LAW

The requirement in the State of New York for sealing recordings upon the expiration of an eavesdropping warrant authorizing such recordings is set forth in CPL 700.50 (subd 2) as follows: "2. Immediately *upon the expiration of the period of an eavesdropping warrant,* the recordings of communications made pursuant to subdivision three of section 700.35 must be made available to the issuing justice and sealed under his directions" (emphasis supplied).

The Federal statute on this subject (US Code, tit 18, § 2518, subd [8], par [a]), provides, in relevant part: "Immediately *upon the expiration of the period of the order, or extensions thereof,* such recordings shall be made available to the judge issuing such order and sealed under his directions" (emphasis supplied).

### DETERMINATION OF CRIMINAL TERM

On the issue as to when the duty to seal the tapes arises,

Criminal Term concluded that it did not arise after the end of the 30-day period set forth in the original warrant, but, rather, after the expiration of the last extension order. With regard to the seven-day delay between the expiration of the last extension order, on Friday, February 15, 1974, and the sealing of all the tapes from plant 7 on Friday, February 22, 1974, Criminal Term took judicial notice that February 16, 17 and 18 constituted a three-day holiday weekend and that the next working day was Tuesday, February 19. In view of the fact that the tapes from plant 7 were sealed on the fourth working day after the termination of the wiretap, Criminal Term was of the opinion that the District Attorney had adequately explained the seven-day delay and, accordingly, that there had been substantial compliance with the statutory requirement for immediate sealing.

### DETERMINATION ON APPEAL

The defendant argues that Criminal Term's failure to consider the wiretap warrant issued for plant 7 on October 19, 1973, and the three subsequent extension orders, as separate warrants for sealing purposes was reversible error. I disagree. The pertinent language contained in CPL 700.50 (subd 2) requires that the sealing of tapes obtained either from "wiretapping" or "mechanical overhearing of conversation" (CPL 700.05, subd 1), be made "[i]mmediately upon the *expiration of the period of an eavesdropping warrant*". (Emphasis added.) Nowhere in such subdivision mandating sealing is there any reference to such procedure being employed after the expiration of an extension order. This, in my opinion, clearly demonstrates that the Legislature intended that the eavesdropping warrant encompass all extension orders for sealing purposes, rather than that each extension order be treated as a separate warrant or eavesdropping order. It should also be noted that CPL 700.50 (subd 2) uses the phrase "the period" rather than "a period" or "each period". This manifestly shows an intent in this State to treat an eavesdropping order, or warrant, together with its extensions, as one continuous period for the purpose of the sealing requirements (see *United States v Fury*, 554 F2d 522).

A close analysis and juxtaposing of relevant statutes included under CPL article 700, entitled "Eavesdropping Warrants", demonstrably supports the proposition that extension orders are but components of an eavesdropping warrant and

are issued for the purpose of continuing the life of such instrument to the conclusion of an investigation into suspected criminal activity. To be specific, "eavesdropping warrant" is defined as "an order of a justice *authorizing or approving eavesdropping* (CPL 700.05, subd 2; emphasis supplied). Under CPL 700.40, it is provided, *inter alia,* that "[a]t any time prior to the expiration of an eavesdropping warrant, the applicant may apply to the issuing justice, or, if he is unavailable, to another justice, *for an order of extension* [of the warrant]" (emphasis and bracketed matter supplied). *Extensions of warrants* authorizing electronic surveillance are authorized by this section (see *United States v Grant,* 462 F2d 28).

In a case decided simultaneously with this one, and involving the identical question as to sealing *(People v Glasser,* 58 AD2d 448), Mr. Justice SHAPIRO cites *People v Simmons* (84 Misc 2d 749, resettled 86 Misc 2d 737, affd 54 AD2d 624) in support of his argument that sealing is required after the expiration of the original and each extension order. However, as the following summary will reveal, the facts in *Simmons* in no way support the position taken by my colleague. According to Mr. Justice GORMAN, in his opinion resettling the initial suppression order in *Simmons* (86 Misc 2d 737, 741, *supra),* as a result of evidence obtained by an undercover agent, an eavesdropping warrant was signed on December 12, 1973 to monitor the telephone of one Joseph Duffy, a seller of heroin. From conversations overheard as a result of the Duffy wiretap, the police obtained another eavesdropping warrant, on January 11, 1974, for the telephone of a female whose first name was Salena. As a result of information received from the Salena tap, a *third eavesdropping warrant* was issued, effective January 30, 1974, for the telephone of Grace Simmons. Thereafter *separate eavesdropping warrants* for the conversations of Albert Morris on his telephone, and Grace and James Simmons on her telephone, were issued on March 1, 1974. A *final warrant* covering calls of the Simmons on the same telephone was signed on April 9, 1974. *All* of the intercepted conversations resulting from the *numerous warrants* were sealed 21 days after the expiration of the *last warrant* on May 29, 1974 (84 Misc 2d 749, 750, *supra).*

Thus, *Simmons* involved five separate warrants involving three different telephone numbers, where no applications for extension orders were made. Here, the back-to-back extensions

simply continued the same wiretap on the same telephone under the same warrant (see *United States v Fury,* 554 F2d 522, *supra).* Moreover, nowhere in the two *Simmons* opinions does the court mention sealing requirements where there are extension orders.

Furthermore, the very meanings usually ascribed to the words "warrants" and "extension" justify the proposition that an eavesdropping warrant encompasses all subsequent extension orders springing from it. The natural and commonly understood meaning will be given to words used in a statute unless it is plain and clear from the statute, or from the context of the words within a statute, or unless it is plain or clear from the circumstances, that a different meaning was intended (82 CJS, Statutes, § 329). A "warrant" has been held to mean, in a legal sense, "a writing from a competent authority in pursuance of law, directing the doing of an act, and addressed to an officer or person competent to do the act" *(People ex rel. Cooke v Wood,* 71 NY 371, 376). A warrant is a writ or precept issued by competent authority *(Moody v State,* 44 Ala App 26).

On the other hand, the word "extension" has been defined, *inter alia,* as "an increase in length of time"; "a part constituting an addition" (Webster's New Collegiate Dictionary, p 406); the addition of something smaller, or of less import than that to which it is attached; the continuance of an existing thing, involving the idea of something pre-existing with which it is connected and which is thereby enlarged (35 CJS, Extension; see, also, *New York Cent. & Hudson Riv. R. R. Co. v Buffalo & Williamsville Elec. Ry. Co.,* 96 App Div 471; *People ex rel. Brooklyn, Queens County & Suburban R. R. Co. v Steers,* 158 App Div 153). The word "extension" ordinarily implies the existence of something to be extended *(State v Graves,* 352 Mo 1102).

In elaborating on his theory that each extension order is in effect an eavesdropping warrant, thus mandating the sealing of tapes emanating from the original document at the end of the initial 30 days, the defendant notes that section 2518 (subd [8], par [a]) of title 18 of the United States Code provides for the sealing of wiretaps "[i]mmediately upon the expiration of the period of the order, or *extensions thereof",* whereas the New York State Legislature, in CPL 700.50 (subd 2), failed to include the phrase "or extensions thereof" after the phrase "[i]mmediately upon the expiration of the period of the eaves-

dropping warrant". He then concludes that this State, by failing to include the clause "or extensions thereof", intended to make its sealing requirement more restrictive than the Federal law. Such conclusion has no merit. As mentioned above, CPL 700.50 (subd 2) requires sealing "[i]mmediately upon the expiration of the period of an eavesdropping warrant". However, CPL 700.40 permits that "period" to be extended upon appropriate application. Accordingly, the statute does not require sealing until the expiration of the final extension order (*People v Rosenberg*, NYLJ, Oct. 20, 1976, p 13, cols 1, 3-4). This conclusion is fortified by language contained in CPL 700.50 (subd 3), the notice provision of CPL article 700. This section requires service of notice on certain persons after the "termination of an eavesdropping warrant, or expiration of an extension order". Among the particulars that must be included in the notice is the "period of authorized eavesdropping, and of the fact that during such period communications were or were not intercepted".

Manifestly, this section defines "period" as encompassing the entire course of surveillance, including extension orders as well as the warrant from which all extension orders emanate. It should be noted that CPL 700.50 (subd 3) obviously requires that only one notice be sent at the end of the investigation, depending on whether that event occurs during or at the end of the period set forth in the warrant, or the final extension order.

Furthermore, CPL 700.40, pertaining to an order of extension, provides that (1) an application for an extension order must conform to the provisions of section 700.20 (application for a warrant); (2) the provisions of sections 700.15 (when a warrant is issuable) and 700.25 (determination of an application for a warrant) are applicable in the determination of an extension order application; (3) the order of extension must conform to provisions of section 700.30 (form and content of a warrant); and (4) the order of extension must be executed in accordance with the provisions of section 700.35 (manner and time of execution of a warrant). Nowhere in such section (700.40) is there any reference to the sealing provisions of section 700.50 (subd 2) being applicable to extension orders. This silence, together with the fact that CPL 700.50 (subd 2) directs sealing "[i]mmediately upon the expiration *of the period* of an eavesdropping warrant", is further evidence that

the Legislature considered an extension order as a means to continue the life of the warrant past its initial 30-day period.

Thus concluding this phase of the appeal, I am of the opinion the People's position that sealing is required under CPL 700.50 (subd 2) only after expiration of the last extension order is correct.

However, with regard to the actual sealing of the tapes from plant 7, I respectfully disagree with Criminal Term's conclusion that such procedure was timely effectuated. The verbatim transcript of the joint suppression hearing on the 13 plants encompasses 1,200 pages. Nowhere in this voluminous record is there any explanation, satisfactory or otherwise, for the seven-day hiatus between the expiration of the last extension order for plant 7 and the sealing. In fact, the following verbatim testimony, adduced on the cross-examination of David Freundlich, the Assistant District Attorney who was evidently in charge of the illegal gambling investigation, clearly demonstrates that the Kings County District Attorney's office played no role whatsoever in the sealing of the tapes:

"Q. When did the original get to the District Attorney's Office?

"A. The day it was sealed.

"Q. What day was it sealed?

"A. I don't know, I have to see the seal.

"Q. Well, was there any type of procedure that you instituted with regard to taking the original tapes, having them sealed and being brought to the District Attorney's Office?

"A. I don't follow you. * * *

"Q. Now, during this time, this approximate time, weeks or months, between the time the original was overheard on the tape recorder and it wound up sealed by a judge, where was the original tape?

"A. I imagine [in] Captain Carney's possession, I never saw them.

"Q. You never saw them, and you don't know?

"A. No, that is correct."

To justify the unexplained seven-day delay in sealing with respect to plant 7, the People contend that the Legislature did not intend that delays of only a few days should be violative of the statute. Such contention has no merit. It is not the length

of delay in sealing which is controlling, but rather whether there exists a satisfactory explanation for any delay. The sealing requirement must be strictly construed and, absent a satisfactory explanation for the failure to comply with such requirement, the tapes must be suppressed (see *United States v Poeta,* 455 F2d 117, cert den 406 US 948; *People v Guenther,* 81 Misc 2d 258; cf. *People v Nicoletti,* 34 NY2d 249). Any delay in the sealing of tapes, unless reasonably explained, necessitates suppression of the tapes as evidence (cf. *United States v Ricco,* 421 F Supp 401).

Both Criminal Term and the People took note of the fact that a three-day holiday weekend followed the expiration of the final order on February 15, 1974. However, no evidence was adduced to show that any effort was made during that period to contact the Judge who issued the wiretap orders. As the court correctly and laconically stated in *People v Guenther (supra,* p 259): "Law enforcement does not cease on weekends nor holidays." Assuming that a Supreme Court Justice was not available to seal the recordings during the three-day holiday weekend, there still remains the unexplained four-day delay which ensued.

Furthermore, the position taken by Criminal Term and the People, that the making of duplicate recordings from the original tapes necessitated the four- or seven-day delay in sealing, is controverted by the testimony of the People's own witness, Captain Carney, chief investigative officer in charge of the wiretap operation. According to Captain Carney, at the end of each day's operation the original tape made that day would be brought to his office and locked in a cabinet. The next morning the tape would be placed in a machine and two copies made from it simultaneously. The copying process on the high speed machine took about an hour.

Thus, by Friday, February 15, 1974, the expiration date of the extended order for plant 7, all of the original tapes had been duplicated with the exception of those made on that day. Assuming that the final day's tapes were not duplicated until Tuesday, February 19, 1974, there still exists a delay until Friday, February 22, 1974, which the People have not explained. While I agree that the term "immediately" used in the sealing statute (CPL 700.50, subd 2) should not be interpreted to mean "instantaneously", it does not follow that the word should be stretched to justify obviously dilatory conduct

on the part of the law enforcement agents involved. Under the facts set forth in this record, I cannot agree that the sealing of the tapes from plant 7 was effectuated "as soon as * * * reasonably possible under the circumstances."

Finally, the procedure used in the sealing of the tapes from plant 7 should not be evaluated without taking into account what had transpired with the tapes from the other 12 plants. Admittedly the tapes acquired from plant 7 are but one small facet in the vast electronic operation which was spread over two or more counties. The 12 other plants, together with plant 7, were under the control of the same police officials and personnel from the District Attorney's office, and information obtained from the tapes in one plant was often used to justify the issuance of additional wiretap orders.

Thus, judicial validation of the tapes from plant 7 because the unexplained delay in having them sealed was only four or seven days, ignores the total lack of attention and indifference accorded to the statutory sealing procedure by those charged with the responsibility of conducting the massive gambling investigation.

Frankly, I might have been inclined to vote that the suppression hearing be reopened and the appeal held in abeyance in order to accord the People an opportunity to present what evidence it might possess to justify the four- or seven-day delay as to plant 7, were it not for the fact that the Assistant District Attorney who argued the appeal candidly admitted that his office could present no further evidence on the issue. Accordingly, I have no alternative but to vote to reverse the judgment and dismiss the indictment.

SUOZZI, J., concurs; DAMIANI, J. P., and HAWKINS, J., concur in the result for the reasons stated in *People v Glasser* (58 AD2d 448).

Judgment of the Supreme Court, Kings County, rendered November 30, 1976, reversed, on the law, motion to suppress evidence obtained as the result of wiretaps at "plant 7" granted, and indictment dismissed. No fact issues have been presented for review.