OPINION OF THE COURT
Fuchsberg, J.
 The New York wiretapping statute (CPL art 700) is the subject of the two questions presented on this appeal: 1. Does CPL 700.50 (subd 2)[1] allow the police to postpone presentation of recordings of intercepted conversations for judicial sealing until after the expiration of the final extension of an eavesdropping warrant?[2] 2. Is this section’s immediate sealing requirement satisfied when transcription and rerecording difficulties delay police presentation of the tapes until 39 days after the expiration of the final extension order? For the reasons that are detailed below, we hold (1) that the police must present each eavesdropping tape for sealing immediately upon the expiration of the specific order covering the period during which it was recorded, and (2) that, in the circumstances of this case, allegations of technical difficulties and manpower shortages were inadequate excuses for delay.
In November, 1972, the police began their investigation of narcotics trafficking at a building on Lexington Avenue in Brooklyn. Visual surveillance of the premises revealed the frequent presence of known narcotics dealers, and undercover agents succeeded in purchasing drugs from these individuals on several occasions. Because they were unaware of the identities of many of those who were involved in the drug trade at that location, the police requested and received judicial authorization to install an eavesdropping device on June 13, 1973.[3] This device, placed in the handset of a telephone at the *120 Lexington Avenue premises, was designed so as to pick up all conversations in the room as well as those conducted via telephone. The warrant was extended for an additional 30-day period on July 11, 1973.
On August 1, the police observed a previously unknown individual later identified as the defendant enter the building. A message to that effect was radioed to another officer, who activated a single tape recorder that received the signal transmitted by the eavesdropping device. This officer also monitored the conversation aurally as it transpired. The substance of the discussion was that the defendant desired to purchase one-half kilogram of heroin for $14,500. The sale was completed when the defendant returned to Lexington Avenue about three hours later. The police observed him enter the premises, receive a brown paper bag and then depart in a taxicab. Acting on the basis of the overheard conversation and their observations, but without a warrant, the police stopped the cab and arrested the defendant, recovering the paper bag, which was later determined to contain heroin. After he was given the warnings required by Miranda v Arizona (384 US 436), the defendant admitted having "had the bag in [his] left hand”.
The police obtained two further extensions of the eavesdropping warrant, but no other conversations involving the defendant were overheard before the device was removed on November 3, 1973. Nevertheless, the original tapes of the recorded conversations were not presented to the issuing Justice for sealing until December 14, 39 days after the expiration of the final extension order on November 5, 1973. One hundred twenty-five days had elapsed since the expiration of the extension order under which the defendant’s conversations were seized.
Before trial, motions were made to suppress the tapes for defects in the applications for the eavesdropping warrant and extensions and for the failure of the police to comply with the statute’s minimization requirements.[4] In addition, the defendant moved to suppress the heroin and his statement on the ground that the police did not have probable cause to arrest *121 him. The motions were denied. At trial, a jury convicted him of criminal possession of a dangerous drug in the first degree, and he was sentenced to from 20 years to life imprisonment.
Upon appeal to the Appellate Division, the court remitted the case for a hearing on the extent of compliance with the sealing requirements of CPL 700.50 (subd 2) (52 AD2d 645). Criminal Term conducted a hearing and found that the Lexington Avenue operation consumed 120 reels of tape which recorded approximately 3,200 conversations; that all these tapes were sealed at the same time, December 14, 1973; that the 3 to 10 officers engaged in the investigation spent considerable time on duties other than monitoring the subject premises; that delays were caused by the incompatibility of the original and rerecording equipment, by the inability of some team members to identify all voices on the tapes, and by manpower reductions for vacations and court appearances; and that, before sealing, the tapes were kept at offices of the New York City Police Department or the District Attorney.
On the basis of these findings, the Appellate Division reversed the conviction and ordered a new trial. The court reasoned that, "[i]n the absence of at least a claim that the duplicate tapes of the intercepted communications were uniformly inaudible, or substantially below that quality which is necessary for transcription * * * the acknowledged need to complete the transcription of the 120 reels of intercepted communications did not constitute a satisfactory explanation for the 39-day hiatus between the expiration of the last extension of the eavesdropping warrant and the date upon which the original tapes were presented for sealing” (55 AD2d, p 609). The analysis which follows leads us to affirm.
CPL 700.50 (subd 2) demands judicial sealing of taped communications "[immediately upon the expiration of the period of an eavesdropping warrant.” The People contend that this language authorizes the police to await the expiration of the final extension of an eavesdropping warrant before presenting any tapes for sealing, as was the case here. We find that construction at odds with both the terms of the statute and the policies it seeks to promote.
Our interpretation of article 700 must be sensitive to the constitutional guarantees against search and seizure that the statute seeks to protect. The insidiousness of electronic surveillance threatens the right to be free from unjustifiable governmental intrusion into one’s individual privacy to a far *122 greater extent than the writs of assistance and general warrants so dreaded by those who successfully battled for the adoption of the Bill of Rights (Olmstead v United States, 277 US 438, 476, 478 [Brandeis, J., dissenting]). Bound up with this right are the individual’s interest in personal autonomy, his need to control the image of his self that is projected to the world, and his right to freedom of expression (1 Dorsen, Bender & Neuborne, Political and Civil Rights in the United States 1048-1049 [4th ed, 1976]). These concerns are particularly germane to our construction of the sealing requirements, for it was the Supreme Court’s constitutional analysis in Berger v New York (388 US 41, 60) that gave rise to the statutory command for a prompt return on an eavesdropping warrant (Blakey & Hancock, A Proposed Electronic Surveillance Control Act, 43 Notre Dame Lawyer 657, 677, n 46).
Appreciation of the constitutional dimensions of the problem has led this court to construe strictly article 700’s sealing requirements (People v Sher, 38 NY2d 600; People v Nicoletti, 34 NY2d 249). A clear implication of those decisions is that, as a drastic and extraordinary remedy (see Berger, supra, p 58; CPL 700.15, subd 4), resort to eavesdropping must be circumscribed by extraordinary safeguards.
A due regard for these principles compels us to conclude that recordings of overheard communications must be presented for judicial sealing immediately upon the expiration of the specific warrant or extension covering the period when they were intercepted. CPL 700.50 (subd 2) speaks in terms of "the expiration of the period of an eavesdropping warrant”, not the termination of the final extension order. In contrast, title 18 (§ 2518, subd [8], par [a]) of the United States Code, upon which our statute was modeled (see Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL art 700, p 243), reads "expiration of the period of the order, or extensions thereof ’ (emphasis ours). There is no escaping the conclusion that the Legislature’s enactment of this variance was purposeful, especially in light of its frequent express references to warrants or extensions in other sections of article 700 (see CPL 700.50, subd 3; 700.60, subd 1). Nor do we stand alone in so construing the statute (see People v Glasser, 58 AD2d 448 [Shapiro, J.]; People v Pecoraro, 58 AD2d 462, 471 [Damiani, J. P., and Hawkins, J., concurring]).[5]
*123 Requiring judicial sealing of tapes upon the expiration of each order is in harmony with the underlying purposes of CPL 700.50 (subd 2) "to prevent tampering, alterations or editing; to aid in establishing the chain of custody; and to protect the confidentiality of the tapes” (People v Nicoletti, 34 NY2d 249, 253, supra). The goal of strictly limiting the opportunity for tampering is particularly undermined by any rule that delays the onset of judicial supervision of the tapes (see People v Glasser, 58 AD2d 448, 452, supra; cf. Biddle, CourSupervised Electronic Searches: A Proposed Statute for California, 1 Pac LJ 97, 117-118). To await the expiration of the final extension order in cases like the one before us now effectively vitiates the "immediate” sealing requirement. Given the absence of a statutory limit on the number of renewal orders that can be obtained (cf. Senate Report No. 1097, 90th Cong, 2d Sess, US Code Cong & Admin News, 1968, pp 2112-2192), sealing might then be postponed indefinitely under the rule proposed by the People.
In the face of this potential for unfairness to the parties to a recorded conversation, the People can suggest no undue hardship that would befall the police if a continuous sealing requirement were imposed (see United States v Fury, 554 F2d 522, 533).[6] For these reasons, we conclude that the reasonableness of a delay in sealing a recorded conversation must be measured from the expiration of the specific order or extension under which it was seized.
In evaluating the adequacy of the explanations advanced for the delay here, it is worth repeating that the tape of defendant’s August conversations was not presented for sealing until 125 days after the expiration of the extension order pursuant to which it was recorded. True, no allegation or proof of tampering or alteration during that protracted period is offered by the defendant. But none is needed. "It is the potential for such abuse to which we address ourselves” (People v Nicoletti, 34 NY2d 249, 253, n, supra).[7] Nor are the allegations *124 of good faith on the part of the police dispositive. Rather, we consider solely whether the People have offered a satisfactory explanation for their delay (People v Pecoraro, 58 AD2d 462, 470, supra; United States v Poeta, 455 F2d 117, 122, cert den 406 US 948).[8]
The officers involved in the investigation testified that manpower shortages and technical problems with recording equipment delayed the production of duplicate tapes and that, in any event, it was necessary to listen to the originals in order to properly transcribe the conversations and identify the participants. We have already rejected many of these arguments in a case in which the tapes were never sealed at all (People v Nicoletti, 34 NY2d 249, 253-254, supra), and we see no reason to depart from that analysis merely because we now are construing the immediacy requirement, which, in effect, seeks to protect the same interests.
 The People attempt to go beyond Nicoletti, however, by arguing that its suggestion that duplicate tapes be prepared was demonstratedly inadequate in the present circumstances. We decline to allow the police to rely on their own failure to use proper equipment or to institute more efficient procedures as an excuse for delay. Law enforcement officials must be sensitive to the fact that, just as a warrant to wiretap may only be granted upon a showing of strict compliance with the law, so will its execution have been for nought unless there has been meticulous adherence to the terms of the warrant and the statute pursuant to which it issued (see, also, *125 People v Simmons, 84 Misc 2d 749, resettled 86 Misc 2d 737, affd 54 AD2d 624).
In fact, it takes little imagination to visualize ready means for producing accurate transcriptions and for identifying the participants to the conversations. The police, for instance, might have installed a second recorder at the site where they received the signal from the eavesdropping device. Thus, two "original” tapes would have been generated, one for immediate judicial sealing and one to be retained for the production of a transcript (see United States v Falcone, 505 F2d 478, 486, supra [Rosenn, Ch. J., dissenting], cert den 420 US 955). Or, obviously they could have attempted to transcribe from the duplicates they made, and, upon reaching the limit of their ability to understand the rerecordings, they could have applied for unsealing and listened to the relevant portions of the originals under judicial supervision (see Sher, 38 NY2d 600, 604-605, supra).
In sum, whether it be measured from the expiration of the final order or that under which the defendant’s conversations were seized, the delay in this case was egregious (compare People v Pecoraro, 58 AD2d 462, supra [7 days]; People v Guenther, 81 Misc 2d 258 [7 days]; People v Scaccia, 55 AD2d 444 [18 and 15 days]; People v Glasser, 58 AD2d 448, supra [41 days]; People v Simmons, 84 Misc 2d 749, resettled 86 Misc 2d 737, affd 54 AD2d 624, supra [21 to 109 days]). Given the inadequacy of the explanation for the lengthy delay, the trial court erred in admitting the recordings.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order affirmed.

. CPL 700.50 (subd 2) provides: "Immediately upon the expiration of the period of an eavesdropping warrant, the recordings of communications made pursuant to subdivision three of section 700.35 must be made available to the issuing justice and sealed under his directions.”
CPL 700.35 (subd 3) requires intercepted communications to be "recorded on tape or wire or other comparable device.”

. CPL 700.30 (subd 7) limits the duration of a warrant authorizing eavesdropping to 30 days, but, under CPL 700.40, the police may obtain successive 30-day extension orders if they can satisfy the statute’s rigorous standards for showing continued need.

. On this appeal the defendant has raised several challenges to the validity of this initial eavesdropping warrant and the sufficiency of the application therefor. We have considered these arguments and find them to be without merit.

. CPL article 700 contains numerous provisions designed to prevent police interception of conversations not pertinent to their investigation or engaged in by individuals not named in the authorization warrant (e.g., CPL 700.10, subd 2; 700.30, subd 7; 700.35, subd 2; 700.65, subd 4; see, generally, People v Brenes, 42 NY2d 41; People v Floyd, 41 NY2d 245; Comment, 61 Cornell L Rev 92, 94-126).

. The comments of an ABA Advisory Committee on a proposed model wiretapping *123 act are also instructive. The statutory formula reads: "As soon as practicable but not later than thirty days after the termination of the overhearing or recording” (ABA Advisory Committee on the Police Function, Standards Relating to Electronic Surveillance, § 5.14 [1968]). The commentary notes that this section "requires that as soon as practicable, but not later than 30 days, a return be made on the electronic surveillance order. This would be in most cases shortly after the surveillance is terminated, or when a renewal of the warrant is sought” (emphasis ours).

. The adequacy of the People’s "logistical difficulties” excuse is considered infra.

. This approach is premised in part on the susceptibility of recorded evidence to *124 manipulation and on a consensus that alterations may be difficult to detect (see, e.g., Nicoletti, supra, p 253; Sher, 38 NY2d 600, 604, supra; United States v Gigante, 538 F2d 502, 505; United States v Falcone, 505 F2d 478, 488 [Rosenn, Ch. J., dissenting], cert den 420 US 955). As Justice Brennan stated in his classic dissent to Lopez v United States (373 US 427, 468), "[f]ar from providing unimpeachable evidence, the devices lend themselves to diabolical fakery” (see, also, Dash, Schwartz & Knowlton, The Eavesdroppers [1959], p 368). CPL article 700 is the realization of a legislative judgment that compliance with procedural safeguards is a more judicially manageable basis for the admissibility of recordings than inquiry into the perhaps insolvable question of whether the tapes have been "doctored”. Unless the police meet their burden of demonstrating compliance, the question of tampering is never even reached (see Sher, supra, p 605).

. As indicated in these cases, this standard has its genesis in the last clause of CPL 700.65 (subd 3), which reads: "the presence of the seal provided for by subdivision two of section 700.50, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any communication or evidence derived therefrom” (emphasis ours) and which has been adopted judicially as an appropriate standard under which to decide cases involving delays in sealing.