THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v NICHO-
LAS J. CALOGERO, Respondent.

Fourth Department, July 10, 1980

**APPEARANCES OF COUNSEL**

*Richard D. Enders, District Attorney (Michael E. Daley* of counsel), for appellant.

*Salvador J. Capecelatro, Jr.,* for respondent.

**OPINION OF THE COURT**

WITMER, J.

█ The question presented on this appeal is whether Criminal Term erred in granting defendant's motion for the suppression of a tape recording of a telephone conversation involving defendant and in enjoining the People from using it as evidence on the trial of defendant upon his indictment for voting fraud and conspiracy to promote or prevent election and related charges. The tape recording was obtained in the course of executing an eavesdropping warrant with respect to illegal gambling. The core issue is whether the police sufficiently minimized their monitoring of calls under the warrant. We conclude that the court erred in suppressing the tape.

Upon the suppression hearing the following evidence was produced: On October 10, 1978 the New York State Police unit charged with investigating gambling obtained from Oneida County Judge WALSH an eavesdropping warrant with respect to telephone number 732-9561 listed to Tony Sparagna's Restaurant at 1125 Lenox Avenue, Utica, New York. Based upon the documentary evidence submitted to him on the application for the warrant, Judge WALSH found that there was reasonable cause to believe that various gambling crimes were being committed and that conversations by Marie Sparagna and others on telephone number 732-9561 would constitute evidence of such crimes or aid in the apprehension of the perpetrators thereof. The warrant authorized the police to intercept all conversations pertaining to such crimes, "including the conversations of others whose identities are now unknown, but which conversations will be evidence of or will lead to evidence of their participation in gambling offenses". The warrant contained no provision requiring progress reports to be made to the issuing Judge during the course of the surveillance, as the Judge in his discretion was authorized to require (CPL 700.50, subd 1).

Interception of calls on the stated number began on October 16, 1978 and continued through November 9, 1978 with some exceptions. Daily log sheets were kept by the police of the calls intercepted. Without specific direction, the police adopted a procedure for minimizing nonpertinent phone calls. As soon as it was determined that a phone call was nonpertinent to the investigation, the tape machine and the tape monitor were

turned off and a note was made on the log that the call was nonpertinent. This procedure, of course, meant that the person monitoring the call must decide whether the call was pertinent, that is, related to gambling.

The only known gambler conspirator at the time the warrant was issued was Marie Sparagna. When she was on the telephone the police would listen long enough to ascertain whether it involved gambling. As soon as they determined that it did not (which they often did), they would turn off the sound but note the continuance of the call. If it continued for some time, the sound would be turned on again every minute or so until the call ended, in order to ascertain whether it had become pertinent.

In calls involving unknown parties, the police would turn off the machine as soon as they learned that it was nonpertinent, as, for example, involving only an order for food. In calls wherein there was a delay in waiting for another party to come to the phone, the police would monitor it until such party took the phone, so that they could determine the pertinency of the call.

Copies of the daily log sheets were delivered to the office of the District Attorney and to Judge WALSH, and the originals were placed in a locker. At the conclusion of executing the warrant the original tapes were delivered to Judge WALSH and sealed.

The evidence shows that on October 27, 1978 call number 23, emanating from Tony's Restaurant, was from a man named "Jack", employed by Tracy-Adams, and the call was to the defendant, a New York State Assemblyman, although he was not recognized by the police as such at the time. It turned out to be the longest uninterrupted call monitored by the police under the warrant, totaling 3 minutes and 59 seconds, and it was completely monitored without turnoff. The police then knew that the only known gambling conspirators were Marie and Tony Sparagna and that neither Jack of Tracy-Adams nor defendant was a gambling suspect.

The police explanation as to why they did not promptly turn off the call is as follows: In the first 15 seconds of the call "Jack" was talking to defendant's secretary and explaining that he wished to speak with defendant. There was then an 18-second pause until defendant got on the telephone. The machine was not turned off then because the purpose of the call had not been revealed, and the warrant authorized discov-

ery of unknown conspirators and gamblers. The illegal nature of Jack's call to defendant was then revealed within 14 seconds, when Jack told defendant that a voter wanted Jack to get him an absentee ballot from a residence at which he no longer lived, and defendant suggested that Jack, "say he does" live there. In the next 21 seconds defendant explained to Jack how he could accommodate the voter without getting himself into legal trouble. An officer testified that after listening to the conversation for a total of 29 seconds he determined that possibly a crime was being committed. In light of what he had heard, the officer continued to monitor the call until it ended, during which time further details were discussed as to how to arrange for what appeared to be an illegal absentee vote.

Based upon the above call, the District Attorney made application to Judge WALSH for amendment of the eavesdropping warrant of October 10, 1978 to include the crimes of illegal voting, conspiracy to promote or prevent election and procuring fraudulent documents to vote, under sections 17-132, 17-152 and 17-160 of the Election Law, and the amendment was ordered on November 9, 1978.

A summary of the surveillance shows that 527 completed telephone calls were monitored in whole or in part. Only 80 of them, including the one at issue, were "pertinent". Of the 527 calls, 261 lasted less than 30 seconds; 35 calls were "spot monitored", that is, turned off and on; and 231 calls were run to completion. Only 45 calls, or 9% of them, ran for longer than one minute.

Criminal Term held that the officers failed to comply with the minimization requirement of CPL 700.30 (subd 7); that the officers improperly continued interception of the conversation between Jack and defendant with reference to absentee voting; and that hence the tape thereof should be and was suppressed. ·  ·

On this appeal the People contend that the record shows that the officers made a good-faith attempt to monitor the calls as authorized in the warrant; that their actions were reasonable; that the interception of the entire conversation between Jack and defendant was proper; and that the original warrant was duly amended accordingly. We agree.

■ Both the statute (CPL 700.30, subd 7) and the eavesdropping warrant required that the officers minimize the interception of nonpertinent calls. The issue before us, therefore, "is whether minimization was actually achieved and whether the

surveillance procedures utilized by the monitoring police officers were adequate to insure that the smallest practicable number of calls not pertinent to the criminal enterprise under investigation were intercepted" *(People v Floyd,* 41 NY2d 245, 249). Because electronic surveillance may be used in a manner to threaten the constitutional guarantees against illegal search and seizure, that is, "the right to be free from unjustifiable governmental intrusion into one's individual privacy" *(People v Washington,* 46 NY2d 116, 121), CPL 700.30 must be construed so as to prevent the expansion of eavesdropping warrants into general warrants, and thus insure that the communications intercepted conform, as nearly as possible, to those subject to interception by the terms of the eavesdropping warrant *(People v Floyd, supra,* p 249). In other words, "no greater invasion of privacy * * * than * * * necessary under the circumstances" is permitted by electronic surveillance *(Berger v New York,* 388 US 41, 57).

In *People v Floyd (supra,* pp 251-252) Judge GABRIELLI, writing for the Court of Appeals, set forth the following general guidelines respecting minimization of intrusion by electronic surveillance:

(1) "[W]hen the government is aware that only a single individual is, or a known group of individuals are, involved in a possible crime, then only communications involving those individuals should be monitored."

(2) "Where the investigation * * * is directed toward discovery of the participants of what appears to be a broad conspiracy, then the surveillance may be larger in scope in order to accomplish this objective, although steps should be taken to assure, to the extent possible, minimization of 'innocent' conversations."

(3) "Conversations of persons who are not targets of the investigation may be monitored for brief intervals to assure that their use of the phone is not a ruse to mask a suspect's use of the phone or to convey information regarding the crimes being investigated".

(4) "Calls between individuals who are both known targets of the surveillance are almost always subject to interception."

(5) "Where a conversation occurs between a known suspect and an individual who is not involved in the conspiracy, or whose possible involvement is unknown, great care must be taken to avoid interception of innocent conversation but monitoring officers should be permitted to make an on-the-spot

determination of pertinency through a brief period of interception".

■ Under such guidelines, especially numbers (3) and (5), *supra,* nonpertinent communications are not free from interception in their entirety. Indeed, *total interception* does not constitute, "without more, a per se violation of the statutory and constitutional requirements" *(People v Brenes,* 42 NY2d 41, 47). The officers must make "a good faith and reasonable effort to keep the number of nonpertinent calls intercepted to the smallest practicable number * * * The determination whether minimization has been achieved must be made on a case-by-case basis with regard to the scope and circumstances of the particular investigation under review" *(People v Floyd, supra,* p 250). This presents the question of burden of proof. While "the accused * * * must shoulder the burden of persuasion on a motion to suppress evidence", "(t)he People have * * * the burden of going forward to show the legality of the police conduct in the first instance" *(People v Di Stefano,* 38 NY2d 640, 652). "This burden may be satisfied by demonstrating that procedures were established to minimize interception of nonpertinent communications and that a conscientious effort was made to follow such procedures" *(People v Floyd, supra,* p 250).

■ In this case the monitoring police officers had a procedure for minimizing nonpertinent phone calls. They were instructed that only calls dealing with gambling were pertinent. The monitoring officers would intercept the calls long enough to determine whether they involved gambling. This decision was left to the discretion of the monitoring officer. If the call was deemed nonpertinent because Marie Sparagna was not a party or because the call was innocent in nature, the officers would cease monitoring and turn off the recording device. However, if the call continued, they would again monitor the call for a period of time to redetermine the pertinency of the call. In this record the statistics on the monitoring show that indiscriminate overhearing or recording of conversations did not occur. Thus, the People have met their prima facie burden to demonstrate that minimization procedures were adopted and followed, and defendant has not rebutted this proof *(People v Floyd,* 41 NY2d 245, 251, *supra).*

By its very nature, electronic surveillance of telephone calls cannot be made without overhearing some nonpertinent conversations *(United States v Bynum,* 485 F2d 490, 500, vacated

on other grounds 417 US 903; see, also, *United States v Cox,* 462 F2d 1293, 1301, cert den 417 US 918). "The recordation of calls of short duration (less than two to three minutes) should be disregarded because of the difficulty of making a determination of pertinency in such a short period of time" *(People v Floyd, supra,* p 253; see, also, *United States v Scott,* 516 F2d 751, 757, cert den 425 US 917). In light of such authorities, the fact that only 45 of the 527 calls extended for more than one minute shows that there was little occasion here for excessive surveillance; and the record reveals that the officers even minimized a substantial number of the calls which extended for less than one minute. Thus, it is clear that the People have established that the officers made a reasonable and conscientious effort to comply with the minimization provisions of the statute and the warrant.

Defendant's contention that the issuing Judge and the District Attorney failed to supervise the surveillance procedures, thus requiring suppression, is without merit. Under CPL 700.50 (subd 1) the requirement of progress reports lies within the discretion of the issuing Justice, but the use of such reports is salutary *(People v Floyd, supra,* p 253). Although only a minimal amount of supervision occurred in this case, the daily log sheets were delivered to the issuing Judge and to the District Attorney, and the record shows that conscientious and reasonable efforts were made to comply with the spirit of the law.

The People also contend that under the circumstances the inteception of the entire conversation between Jack and the defendant was proper; and we agree.

The statute (CPL 700.65, subd 4) provides that: "When a law enforcement officer, while engaged in intercepting communications in the manner authorized by this article, intercepts a communication which was not otherwise sought and which constitutes evidence of any crime that has been, is being or is about to be committed, the contents of such communications, and evidence derived therefrom, may be disclosed or used as provided in subdivisions one and two. Such contents and any evidence derived therefrom may be used under subdivision three when a justice amends the eavesdropping warrant to include such contents. The application for such amendment must be made by the applicant as soon as practicable. If the justice finds that such contents were otherwise intercepted in

accordance with the provisions of this article, he may grant the application."

In *People v Di Stefano* (38 NY2d 640, 648, *supra)* the Court of Appeals wrote: "By enacting CPL 700.65 (subd 4) the Legislature obviously intended to engraft the 'plain view' exception *(People v Spinelli,* 35 NY2d 77, 80-81; *Coolidge v New Hampshire,* 403 US 443) upon the general constitutional requirement that seized evidence must be particularly described in the application for a warrant * * * Since eavesdropping warrants are based on substantially the same principles applicable to search warrants for physical evidence * * * and, inasmuch as evidence not described but discovered in the course of a lawful search is under certain circumstances admissible * * * it seems only logical for the Legislature to have intended that intercepted communications be treated similarly."

The evidence is clear that in the course of the execution of a proper eavesdropping warrant the officers inadvertently learned of the commission of another crime. This information came to them in the first one-half minute of the intercepted conversation, and so it was properly heard and the officers were thereafter entitled to monitor the rest of the conversation. In accordance with the statutory authorization, the court duly amended the original eavesdropping warrant to include this interception.

The order should, therefore, be reversed and defendant's motion to suppress the intercepted call should be denied.

HANCOCK, JR., J. P., SCHNEPP, CALLAHAN and DOERR, JJ., concur.

Order unanimously reversed, on the law and facts, and motion to suppress denied.