THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ARTIC ROGERS, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered January 4, 1977, convicting him of criminal possession of a controlled substance, in the first, third, fifth and sixth degrees and criminal use of drug paraphernalia in the second degree (two counts), upon a jury verdict, and imposing sentence. Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered. At defendant's trial, the People introduced an eavesdropping tape which contained a conversation between defendant and a major drug dealer. No suppression motion was made by defendant. On direct examination defendant admitted that he was one of the parties speaking on the tape. The People also concede that the conversation was from one of the tapes invalidated by the Court of Appeals in *People v Washington* (46 NY2d 116)

for failure to comply with the sealing requirements imposed by the Criminal Procedure Law. However, the People contend they should be allowed to refute any presumption of tampering established by *People v Washington (supra)*. They allege that defendant's admission on direct examination that he was one of the speakers provides such refutation. This argument must be rejected. The People's argument is directed to a level of analysis never reached in this case. The Court of Appeals stated that the question of tampering is not reached until the police affirmatively demonstrate they have complied with the statutory requirements *(People v Washington, supra,* pp 123-124, n 7). In addition, the trial court's supplemental instructions on the question of circumstantial evidence, critical to this case because the evidence here was circumstantial, were coercive. Several hours after the jury began deliberations the jury sent a note to the court. This note advised the court that one juror would not convict on circumstantial evidence because the juror did not believe in circumstantial evidence. The following comments were addressed to the jury by the court: "Is that the note? Is that correct. This note that I received; is that correct? THE FORELADY: Yes, that's correct, but—THE COURT: Well, this is hardly the time to find out that a juror has reservations about the law. This is a month after a trial. We spent several days in picking of a jury and at the very beginning, when the jury was first selected, at great length and on more than one occasion it was made clear to the jury there's going to be several questions of law, and while it was unusual I still did it because I thought it was the only fair thing to do, to apprise the jurors—the prospective jurors what they would have to consider in this case, and at great length, before even one juror was selected, before there was even a juror in the box, when I addressed the entire panel sitting in the courtroom, I said there would be—that the case is based almost exclusively on circumstantial evidence and I went into what circumstantial meant. I did it very carefully. I also talked about accomplice testimony and then asked the panel whether they had any reservations about that, whether anybody felt that they couldn't accept those principles of law, and then when the jurors were placed in the box they were asked several questions all over again. All of you took your oath of office. All of you said that you would accept the law from me without any reservation. If you had expressed a contrary opinion you never would have been selected on this jury. The least we can expect is people to be honest and to be truthful to their oath. We have spent now exactly almost a month on this case. The time, the effort, the energy, the cost to the People, the anxiety to a defendant, and to have to find out at this late stage that a juror does not believe in circumstantial evidence, when I made it very clear to you my charge to the jury that circumstantial evidence, if it meets the requirements of law, not only that it's good evidence, it's the highest form of evidence. Direct evidence can be sometimes misleading. Sometimes we think what we see is actually so and we know from our own experience that many things we see may not be so. But where you get a set of circumstances, as the example that I gave you, and where each circumstance is established and is factual and there's no question about it, and when you add all of those circumstances up and they can only come to one conclusion, and excluding any other conclusion there couldn't be any better form of evidence upon which to base any kind of a verdict." The court then reread its main charge on circumstantial evidence. After doing so the court continued with the following comments to the jury: "If circumstantial evidence meets these elements, it constitutes—and I'm not making this up, that has been held to be the law—it constitutes the highest form of evidence which the law

commands and jurors cannot conscientiously disregard. Now whether or not it did on this case, I don't mean to infer and I don't want you to take it that I am inferring that the circumstantial evidence in this case meets these tests. But what I am saying to you, that given circumstantial evidence, as we have in this case, and if it should meet those three tests that I've given to you, then no juror may conscientiously disregard it and be arbitrary and say I will not base a verdict on that because it is circumstantial. That would not be—you would not be truthful to your oath of office as a juror if you did that. That does not mean—again I say it, I reiterate, that I am asking you to take it from anything that I've said so far up until now or at any time during my charge that I believe that there is sufficient circumstantial evidence. You must make that basis. You must come to that conclusion. But what I'm saying to you is I must be sure that if you do find that all the elements of circumstantial evidence are present, that you wouldn't arbitrarily say I cannot vote guilty because it is circumstantial evidence. Now you've heard my charge again. Will all of you jurors accept that proposition of law? Do you accept it? (The jury answers in the affirmative). THE COURT: And will you abide by that proposition of law without hesitation or question or reservation? Again I reiterate again, I'm not saying that there's sufficient circumstantial evidence in this case. I'm asking you as jurors to determine whether there is or not. If you feel that there is—not if you feel, if you're convinced beyond a reasonable doubt that there is, then your obligation is to adhere to what I've just given you, and if all the other essential elements of the crimes have been proven, then you must find the defendant guilty. If you have a reasonable doubt as to whether there is sufficient circumstantial evidence or whether the circumstantial evidence meets the tests that I've given to you, then, of course, your obligation is to vote not guilty. Now will you all abide by that? (The jury answers in the affirmative). THE COURT: No hestitation or reservation on anybody's part? (The jury answers in the affrmative). THE COURT: All right, I'm excusing the jury. Return to deliberate." Defense counsel moved for a mistrial which motion was denied. After nine hours of deliberation the jury was sequestered for the night. On the following day, while neither the District Attorney nor defendant's attorney were present, the jury sent another note to the court. This note advised the court that one juror still would not accept circumstantial evidence despite the court's instruction. In addition the forelady refused to allow other notes to be sent to the court and would not sign this note. The jury was sent out to lunch without being recalled by the court for further instructions. A unanimous verdict was reached after lunch with the forelady advising the court to disregard all notes given it. The jury was polled but there was no further questioning by the court about circumstantial evidence. The trial court, despite its efforts to assure the jury that it was not expressing an opinion as to the evidence, used language which had the effect of leading the jury to believe it must reach a verdict. This language was so strong that the jurors could have inferred that there must be enough evidence to establish defendant's guilt, which was impermissible. Gulotta, J. P., Margett, O'Connor and Weinstein, JJ., concur.