*285 OPINION OF THE COURT
Gerald Sheindlin, J.
The defendants were indicted for kidnapping in the first degree, conspiracy in the second degree and criminal possession of a weapon in the second degree. The defendants move for an order suppressing information obtained pursuant to an eavesdropping warrant on the grounds that (1) the issuing Justice lacked jurisdiction over the geographical area in which the warrant was to be executed; (2) the warrant failed to specify termination provisions; (3) the failure of the police to comply with the statute’s minimization requirements, and (4) the failure of the People to timely comply with the statute’s sealing requirements.
On the basis of the foregoing papers and court documents, the court makes the following findings of fact and conclusions of law.
FINDINGS OF FACT
On October 19, 1991, at approximately 4:30 A.M., Mr. Juan Antonio Araujo was abducted at gunpoint from his home in Bronx County and transported to an apartment in Manhattan.
On the same day at approximately 8:00 a.m., an individual named "Javier” telephoned Ms. Nydia DelaRosa, Mr. Araujo’s mother, at her home in the Bronx. He informed her that they had abducted her son and that they would kill him unless she provided them with certain information. Ms. DelaRosa immediately notified the police and consented to having a trap and trace device placed on her phone. "Javier” and other unnamed individuals made approximately 15 additional calls wherein they threatened to kill her son if she failed to supply the information and $1.2 million.
As a result of the trap and trace device, it was ascertained that the defendants were using a cellular phone bearing the number (508) 783-1687 and registered to Yamiri Lopez of Lawrence, Massachusetts. However, the telephone company could not determine the exact location of the cellular phone. Under normal circumstances, a trap and trace device enables the phone company to trace an incoming call back along the phone wire system to the site where the outgoing call originates. This method is not available when a caller is using a cellular phone. Cellular phones operate by emitting radio-waves which are picked up by the nearest cellular phone company relay station which are located throughout the State. *286 The radiowave is then transformed into a wire system. Therefore, although a trap and trace device can trace an incoming call from a cellular phone back to the particular relay station which picked up the radiowaves, there is no further wire which would allow a trace to the site of the actual phone. The sole method available to determine the exact location of a cellular phone is to intercept the outgoing calls at the relay station. Thereafter, space satellites are utilized. The satellite is capable of locating the emission site of the cellular phone’s radiowave transmission.
On October 22, 1991, the District Attorney of Bronx County submitted an application for an eavesdropping warrant for the cellular phone. By intercepting the cellular phone calls, the police sought to identify and locate "Javier” and the location of the victim. Said application was approved on October 22, 1991 and an eavesdropping order was issued in Bronx County by Justice Frank Diaz. Pursuant to the eavesdropping order, the cellular and telephone service intercepted all the cellular phone calls and rerouted them through their main facilities in Manhattan to the 50th Precinct in Bronx County where they were overheard and recorded. Space satellites traced the origin of the cellular phone’s radiowaves. As a result, the cellular phone was connected to a specific address in Queens County. The police overheard numerous calls between "Javier” and other unknown males discussing the kidnapping. Based upon all the information gathered and further police investigation, on October 26, 1991, the police rescued Mr. Araujo and arrested the defendants. On that same date, Justice Diaz issued a sealing order on all the recordings made as a result of the eavesdropping warrant.
CONCLUSIONS OF LAW
On a motion to suppress evidence obtained as the result of an eavesdropping warrant, the prosecution bears the burden of demonstrating strict compliance with CPL article 700. "In the absence of compliance, the State officials lack authority to wiretap, and any interceptions they make * * * is inadmissible.” (People v Sher, 38 NY2d 600, 604 [1976]; People v Washington, 46 NY2d 116 [1978].)
The court finds that the People have demonstrated compliance with the jurisdiction, duration, minimization and sealing requirements of the New York eavesdropping statutes.
*287 JURISDICTION
A Judge has jurisdiction to issue an eavesdropping warrant where the Judge is "any justice of the supreme court of the judicial district in which the eavesdropping warrant is to be executed” (CPL 700.05 [4]). Justice Diaz is a Justice of the Supreme Court of Bronx County and therefore authorized to issue eavesdropping warrants that are to be executed in his judicial district. The issue, however, is whether the warrant was "to be executed” in Bronx County. The troubling issue presented is caused by the failure of the statute to specifically define the meaning of "execute” in order to clearly identify the appropriate jurisdiction to issue an eavesdropping warrant. This issue presented is one of first impression under the State statute as it relates to cellular telephones.
Evaluation of other statutes noting the "execution” of eavesdropping warrants leads to the conclusion that the legislative intent was to equate "executing” a warrant with the jurisdiction where the communication is to be intercepted. (See, CPL 700.35.)
Although the statute fails to specifically define where an "interception” occurs, CPL 700.05 (3) defines an "intercepted communication” as follows: " 'Intercepted communication’ means (a) a telephonic or telegraphic communication which was intentionally overheard or recorded by a person other than the sender or receiver thereof, without the consent of the sender or receiver, by means of any instrument, device or equipment” (emphasis added). As the conversation in question was overheard by telephone, Penal Law § 250.00 (3) defines a "telephonic communication” as: "any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable or other like connection between the point of origin and the point of reception (including the use of such connection in a switching station) furnished or operated by any person engaged in providing or operating such facilities for the transmission of communications and such term includes any electronic storage of such communications.” (Emphasis added.) An "aural transfer” is defined as "a transfer containing the human voice at any point between and including the point of origin and the point of reception.” (Penal Law § 250.00 [4] [emphasis added].)
Accordingly, this court concludes that "to execute” an eavesdropping warrant intercepting a telephone conversation is to order the intentional overhearing or recording of the *288 human voice as it is transferred through the use of wire, cable, or other like communication. The jurisdiction where the conversation is overheard or recorded constitutes the jurisdiction of the issuing Justice.
The defendant’s argument that the warrant should be deemed executed at the relay stations or at the facilities where the calls were rerouted is untenable. It defies logic to expect the police to predict which relay station is going to pick up the cellular phone calls. The cellular phone may be in constant motion throughout the State. Therefore it can be picked up by numerous relay stations in various jurisdictions. To allow the defendants’ reasoning to prevail would require the prosecution to apply for an eavesdropping warrant from a Judge in every jurisdiction of the State to cover all possible relay station reception sites.
It is likewise unreasonable to deem the place where the calls are traced or rerouted as the proper jurisdiction. If the defendants’ reasoning is followed, the only Judges in this State who would be authorized to issue eavesdropping warrants would be those who happen to preside in jurisdictions where the necessary telephone services happened to be erected. This would result in a limited number of jurisdictions authorized to issue all the eavesdropping warrants in the State regardless of whether or not that jurisdiction has any connection or interest in either the crime or the parties involved.
Accordingly, since the cellular phone conversations were first overheard and recorded at the 50th Precinct in Bronx County, the warrant is deemed executed in Bronx County and within Justice Diaz’ jurisdiction. The defendant’s motion to suppress on this ground is denied. (See, United States v Rodriguez, 968 F2d 130, 136 [2d Cir 1992] [In evaluating the Federal statute, the court concluded: "(A) communication is intercepted not only where the tapped telephone is located, but also where the contents of the redirected communication are first to be heard”]; see also, People v Rodriguez y Paz, 58 NY2d 327 [1983].)
DURATION
CPL 700.10 (2) states that "No eavesdropping * * * warrant may authorize or approve the interception of any communication * * * for any period longer than is necessary to achieve the objective of the authorization, or in any event longer than *289 thirty days.” Justice Diaz’ order clearly shows that not only did the order specify the authorization period, but it limited it to 20 days instead of the full 30 days allowed by the statute. The objective of the warrant was achieved before the 20-day expiration date and the recordings were sealed on October 26, 1991 — approximately 16 days before the expiration of the warrant. Clearly, the People have complied with the durational requirements of the statute.
MINIMIZATION
"An eavesdropping * * * warrant must contain * * * [a] provision that the authorization to intercept * * * shall be conducted in such a way as to minimize the interception of communications * * * not otherwise subject to eavesdropping * * * under [the] article” (CPL 700.30 [7]). "Minimization may be defined as a good faith and reasonable effort to keep the number of nonpertinent calls intercepted to the smallest practicable number * * * The burden lies with the People 'of going forward to show the legality of the police conduct in the first instance’ ”. (People v Floyd, 41 NY2d 245, 250.)
The court finds that the People have met their burden of establishing a prima facie compliance with the statute by presenting evidence that minimization instructions were prepared and delivered to the officers involved in executing the eavesdropping warrant. The instructions were detailed and specific. They delineated directions such as the specific subject matter to intercept; the requirement to record all monitored conversation; identification of privileged communications and the required cancellation of monitoring; and how to monitor conversations pursuant to minimization directives. The defendants, however, have failed to set forth any specific evidence to rebut the prima facie showing. Since it is the defendants "who must shoulder the burden of persuasion” (People v Di Stefano, 38 NY2d 640, 652), their motion to suppress on this ground is denied.
SEALING
CPL 700.50 (2) states that "[immediately upon the expiration of the period of an eavesdropping * * * warrant, the record[s] of communications * * * made pursuant to subdivision three of section 700.35 must be made available to the issuing justice and sealed under his directions.” "Requiring judicial sealing of tapes upon the expiration of each order is in *290 harmony with the underlying purposes of CPL 700.50 (subd 2) 'to prevent tampering, alterations or editing; to aid in establishing the chain of custody; and to protect the confidentiality of the tapes’ (People v Nicolette, 34 NY2d 249, 253 * * *)” (People v Washington, 46 NY2d 116, 123 [1978]). On October 26, 1991, 16 days before the expiration of the warrant and immediately upon the termination of the investigation, Justice Diaz issued a sealing order on all the tape recordings obtained pursuant to the warrant. Accordingly, the court finds the People have timely complied with the statute’s sealing requirement.
CONCLUSIONS
Accordingly, this court finds that the People have complied with the mandates of the statute in each and every respect. The defendants’ motion to suppress is therefore respectfully denied.