*583 OPINION OF THE COURT
Martin Marcus, J.
In this case, the defendant, along with six others, was indicted by the grand jury of Bronx County on July 23, 2004 and charged with enterprise corruption (Penal Law § 460.20 [1] [a]) and promoting gambling in the first degree (Penal Law § 225.10). The indictment was the culmination of an investigation that included the use of pen register and trap and trace devices on five land-line telephones located in New York County; the interception of telephonic and fax communications occurring over those same phones; the interception of telephonic communications occurring over three cellular telephones; and the execution of search warrants that were obtained based on information derived, at least in part, from the electronic surveillance of the New York County telephones, as well as the cellular telephones. On the eve of trial, the defendant’s attorney moved to suppress this evidence on the ground that the judge who issued the warrant authorizing the electronic surveillance of the New York County telephones had no jurisdiction to do so. The People opposed the defendant’s motion. For the reasons set forth below, the defendant’s motion was denied.
Timeliness of the Motion
On August 2, 2004, at the defendant’s arraignment on the indictment, the prosecutor provided the attorney who previously represented the defendant with copies of the warrants authorizing the electronic surveillance and the accompanying applications. He then had 45 days within which to file a motion to suppress evidence derived from the eavesdropping warrant (CPL 255.20 [1]), but he did not do so then or thereafter. Although recognizing the untimeliness of this motion, the defendant’s present attorney, who only recently began representing the defendant, argued that the court should consider the motion because the failure of the defendant’s former attorney to make it constituted ineffective assistance of counsel. Although the People have offered no substantive response to this Sixth Amendment claim, they argue that the motion should be denied as untimely.
Notwithstanding the time limitation applicable to a defendant’s motion, the trial court “in the interest of justice, and for good cause shown, may, in its discretion, . . . entertain and dispose of the motion on the merits.” (CPL 255.20 [3].) Given the recent substitution of counsel, the fact that the overwhelm *584 ing weight of evidence against the defendant is derived from the electronic surveillance, and the narrow scope of the issue raised, I considered the merits of the motion in the interest of justice. (See People v Coleman, 114 Misc 2d 685, 689 [Sup Ct, Kings County 1982]; compare People v Frigenti, 91 Misc 2d 139, 140 [Sup Ct, Kings County 1977].)[1]
History of the Electronic Surveillance
In conjunction with the Bronx Vice Enforcement Squad, the Bronx County District Attorney began investigating the defendant in July 2002. From the investigation, they developed probable cause to believe that the defendant was in control of policy gambling at a number of locations within Bronx County, including 595 East 141st Street, 694 East 141st Street, and 625 East 137th Street,[2] and that control of the gambling operation was centered in a wire room located in apartment 5C at 4761 Broadway in New York County. As part of the investigation, the District Attorney’s Office sought and obtained from the Honorable Edward M. Davidowitz, a Justice of the Supreme Court sitting in Bronx County, orders authorizing the use of pen register and trap and trace devices for five land-line telephones registered to the defendant and located in that New York County apartment.
On February 26, 2004, Justice Davidowitz issued an eavesdropping warrant authorizing the interception of telephonic communications occurring over those five land-line telephones, finding probable cause to believe that they were being used in the commission and furtherance of the crimes of promoting gambling, possession of gambling records, and conspiracy to *585 commit those crimes, in Bronx County. Various amendments and extensions of the warrant were also issued, all but one by Justice Davidowitz.[3] The warrant and its extensions also authorized the continued use of pen register and trap and trace devices over the telephone lines.[4]
The defendant asserts that Justice Davidowitz, who is a Justice of the Twelfth Judicial District, had no authority to issue the original warrant or any of its extensions and amendments,[5] since they authorized the interception of communications over telephone lines in Manhattan, which is in the First Judicial District. The defendant also claims that, for the same reason, Justice Davidowitz had no authority to issue the authorization to use pen registers and trap and trace devices on these *586 telephone lines. On this basis, the defendant moved to suppress the communications (voice and facsimile) intercepted over the telephone lines, the pen register and trap and trace information, and the fruits of that evidence, including communications intercepted pursuant to eavesdropping warrants authorizing the interception of communications over several cell phones[6] and records seized pursuant to search warrants, which were obtained at least in part on information obtained pursuant to the eavesdropping.
In an affidavit submitted in opposition to the defendant’s motion, which is unchallenged by the defendant, the People allege that all communications intercepted pursuant to the warrant, including its extensions and amendments, were monitored at a “receiving station” located at 500 Abbott Street in Bronx County. The People explain that the interceptions were accomplished by means of a “pot line” placed by the telephone company, Verizon Communications, in the vicinity of the telephone lines, which then directed communications to and from the target telephones to the receiving station, where they were overheard and recorded simultaneously with their transmission over the telephone lines that were the subjects of the warrant.[7] In a supplemental affidavit, the People explain that the pen register and trap and trace information was obtained in the same manner and at the same Bronx “receiving station.” Asserting that the warrants and orders were thus “executed” where the communications were intercepted and where the information was obtained, the People ask that the defendant’s motion be denied.
*587 Geographical Jurisdiction
A “justice may issue an eavesdropping warrant . . . upon ex parte application of an applicant who is authorized by law to investigate, prosecute or participate in the prosecution of the particular designated offense which is the subject of the application.” (CPL 700.10 [l].)[8] According to the affidavits submitted in the application, evidence derived during the investigation had shown that the defendant was involved with more than a dozen gambling locations within Bronx County. His conduct and that of his associates, as described in those affidavits, “had a sufficient nexus to Bronx County to authorize the Bronx County District Attorney’s investigation and concomitant applications for the challenged electronic surveillance.” (People v Di Pasquale, 47 NY2d 764, 765 [1979]; see United States v Smith, 726 F2d 852, 861-862 [1st Cir 1984]; United States v Lilla, 534 F Supp 1247, 1258 [ND NY 1982].) Thus, the District Attorney of Bronx County had the authority to investigate and prosecute the crimes that were the subject of the eavesdropping warrants, and thus the authority to apply for their issuance. The defendant does not contend otherwise.
The question remains whether Justice Davidowitz had authority to issue the warrants. An eavesdropping warrant may be issued by “any justice of the supreme court of the judicial department ... in which the eavesdropping device is to be executed.” (CPL 700.05 [4].) Similarly, a Supreme Court justice may issue an order authorizing the use of a pen register and trap and trace device in the judicial district in which the order is to be executed. (CPL 705.00 [6] [“ ‘Justice’ means justice as defined in subdivision four of section 700.05 of this chapter”].) Although CPL article 700 does not define the term “executed,” the meaning of this term can be inferred from other provisions in article 700 and in the Penal Law.
First, CPL 700.35 (1) provides that “[a]n eavesdropping . . . warrant must be executed according to its terms by a law enforcement officer who is a member of the law enforcement agency authorized in the warrant to intercept the communications.” (Emphasis supplied.) Thus, an eavesdropping warrant is “executed” by law enforcement officers. Second, CPL 700.30 (7) requires that an eavesdropping warrant “contain ... [a] provi *588 sion that the authorization to intercept. . . shall be executed as soon as practicable” (emphasis supplied). Thus, law enforcement officers “execute” eavesdropping warrants when they “intercept” communications. Finally, CPL 700.05 (3) defines an “intercepted communication” as including both “(a) a telephonic . . . communication which was intentionally overheard or recorded by a person other than the sender or receiver thereof, without the consent of the sender or receiver, by means of any instrument, device or equipment,” and “(c) an electronic communication which was intentionally intercepted or accessed [without such consent and by such means].”[9] Thus, telephonic and electronic (e.g. fax) communications are intercepted when they are overheard or acquired. In sum, an eavesdropping warrant is “executed” when and where telephonic communications are intercepted or electronic communications are acquired.
Prevailing case law supports that conclusion. Only one New York State court has considered this question, albeit in the context of the interception of communications occurring over a cellular telephone. In People v Delacruz (156 Misc 2d 284, 288 [Sup Ct, Bronx County 1992]), pointing to the definition of an “intercepted communication” as “a telephonic . . . communication which was intentionally overheard or recorded by a person other than the sender or receiver thereof, without the consent of the sender or receiver, by means of any instrument, device or equipment,” the court concluded that “[t]he jurisdiction where the conversation is overheard or recorded constitutes the jurisdiction of the issuing Justice.” The court also noted that, in particular for cell phone conversations, it “defies logic to expect the police to predict which relay station is going to pick up the cellular phone calls,” especially because a cellular telephone “may be in constant motion throughout the State.” (Id.)[10]
*589 The holding in Delacruz is echoed in decisions of the Second Circuit, including those arising not only in the context of electronic surveillance of cell phones, but of land-line telephones as well. In United States v Rodriguez (968 F2d 130 [2d Cir 1992]), for example, the government obtained from a federal district court judge of the Southern District of New York an order authorizing the interception of telephonic calls originating from four land-line telephones located in New Jersey, based on a representation that interception of the telephone conversations would occur in the Southern District of New York. Rejecting the defendant’s argument that the order could only have been issued by a judge of the District Court of New Jersey, the Second Circuit held that since “the definition of interception includes the ‘aural’ acquisition of the contents of the communication, the interception must also be considered to occur at the place where the redirected contents are first heard.” (United States v Rodriguez, 968 F2d at 136, citing 18 USC § 2510 [4] [which defines “interception” as “the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device”].)
Similarly, in United States v Burford (755 F Supp 607, 610-611 [SD NY 1991], affd without op 986 F2d 501 [2d Cir 1992]), the government intercepted conversations over a Maryland telephone line pursuant to an order issued by a judge in the Southern District of New York. Using a “slave” device, all of the conversations were routed to a “wire room” in New York where drug enforcement agents heard and recorded them. As in Rodriguez, the court found in 18 USC § 2510 (4) no requirement that the court issuing an electronic surveillance order be located in the same jurisdiction as the telephone line to be intercepted, and concluded that, for jurisdictional purposes, an “aural” acquisition meant “where the communication is actually heard.” (United States v Burford at 610; see also United States v Gotti, 42 F Supp 2d 252, 286 [SD NY 1999] [citing both Delacruz and Rodriguez]; United States v Giampa, 904 F Supp 235, 278 [D NJ 1995]; In re State Police Litig., 888 F Supp 1235, 1264 [D Conn 1995].)
Every other federal circuit court that has considered the issue has reached the same conclusion. (See United States v Denman, 100 F3d 399, 403-404 [5th Cir 1996]; United States v Ramirez, 112 F3d 849, 852 [7th Cir 1997]; United States v Tavarez, 40 F3d 1136 [10th Cir 1994]; United States v Jackson, 207 F3d *590 910, 914 [7th Cir 2000]; United States v Luong, 471 F3d 1107, 1109 [9th Cir 2006]; United States v Nelson, 837 F2d 1519, 1527 [11th Cir 1988].) Indeed, no court, federal or state, appears to have ruled to the contrary. (See generally Carr and Bellia, Law of Electronic Surveillance § 4:56 [Thomson West 2007].)
Although not binding, federal court decisions concerning federal statutes analogous to state laws are generally highly persuasive authority, since uniformity in the interpretation of federal statutes and state statutes is desirable. (Matter of Central Hudson Gas & Elec. Corp. v Public Serv. Commn. of State of N.Y., 108 AD2d 266, 271 [3d Dept 1985]; Matter of Lazarus [Haxton & Son, Inc. — Corsi], 268 App Div 547, 554 [3d Dept 1944]; see also Matter of Marx v Bragalini, 6 NY2d 322, 333 [1959] [“It has long been the policy of our courts to adopt, whenever reasonable and practical, the Federal construction of substantially similar tax provisions”].)
However, the New York Court of Appeals has noted that “New York State has . . . responded to the problems raised by electronic surveillance with greater protection than is conferred under Federal law” (People v Capolongo, 85 NY2d 151, 160 [1995]), and that its “interpretation of article 700 must be sensitive to the constitutional guarantees against search and seizure that the statute seeks to protect” (People v Schulz, 67 NY2d 144, 148 [1986]). The Court has also noted that “[b]ecause electronic surveillance is singularly invasive, law enforcement officials may intercept communications only when they scrupulously follow constitutional and statutory requirements” (People v Darling, 95 NY2d 530, 535 [2000]).
Because of its concern about the invasiveness of electronic surveillance, the court has sometimes interpreted various provisions of article 700 more strictly than their federal counterpart, even when the language of the state and federal provisions was identical or substantially the same. (Compare e.g. People v Washington, 46 NY2d 116 [1978] [tapes must be sealed “immediately” after expiration of each order or extension and not only after all authorized eavesdropping is over], with United States v Fury, 554 F2d 522, 533 [2d Cir 1977] [“the government need seal the tapes only after the termination of the extensions of the original order”]; People v Winograd, 68 NY2d 383 [1986] [suppression required because of unexplained failure to contact issuing justice over weekend and failure to seal before another justice when issuing justice was unavailable on religious holiday], with United States v Massino, 784 F2d 153, 157 [2d Cir *591 1986] [collecting Second Circuit cases permitting sealing delays of 6, 13, 24 and 42 days based on explanations offered to suppression court]; People v Winograd, 68 NY2d 383 [1986] [application for retrospective amendment authorizing testimonial use of unsought intercepted communication not timely when made 18 days after probable cause existed that intercepted conversations related to another crime], with United States v Gotti, 42 F Supp 2d 252, 269 n 5 [SD NY 1999] [application within two months “seems reasonable”]; United States v Castellano, 610 F Supp 1359, 1431 [SD NY 1985] [application two weeks after interception timely]; United States v Aloi, 449 F Supp 698, 726 [ED NY 1977] [applications after delays of 10, 22, 17 and 24 days timely].)
In other situations, however, the Court of Appeals has demanded no more than what federal law, as interpreted by the federal courts, requires. (See e.g. People v Darling, 95 NY2d 530, 536 [2000] [holding that eavesdropping warrant need not specify telephone number to be tapped so long as telephone line is specified, noting that “CPL article 700’s Federal counterpart (18 USC § 2518) also does not require specification of a telephone number”], citing United States v Feldman, 606 F2d 673, 680 [6th Cir 1979]; compare People v Marino, 49 NY2d 774 [1980] [failure to provide court with progress reports as required by eavesdropping warrant not grounds to suppress where no prejudice to defendant], with United States v Scafidi, 564 F2d 633, 641 [2d Cir 1977] [denying defendant’s motion to suppress intercepted conversations because progress reports which were to be filed every 15 days were filed up to two weeks late or not at all]; see also People v Guerra, 65 NY2d 60 [1985] [noting that the Supreme Court had held in Smith v Maryland (442 US 735 [1979]) that the use of a pen register is not a search within the meaning of the Federal Constitution, and holding that it was not a search under the New York State Constitution either].)
The defendant asserts that a conclusion that an eavesdropping warrant is “executed” in the place where conversations are intercepted “would make a mockery °of the requirement that the Judge had to be located in the same judicial district as the warrant is to be executed.” However, there are rational and practical reasons justifying a legislative and judicial determination permitting the jurisdiction of a judge to issue an eavesdropping warrant to turn on the place of interception rather than on (or in addition to) the location of the facilities that are the subject of the order. If an eavesdropping warrant authorized the *592 interception of communications over a cellular telephone, for example, the jurisdiction in which the telephone is located could change as the phone was carried from one place to another. Indeed, even the area code to which the phone was assigned would have no necessary significance, since the telephone could be owned and.used by a person who did not live in or ever enter the geographical area to which the area code was assigned. Similarly, if the eavesdropping warrant authorized the interception of oral communications occurring in a vehicle, the jurisdiction in which the communications were occurring could change as the vehicle traveled from one place to another.
Of particular relevance to this case are situations in which the facilities which were to be the subject of electronic surveillance, even though fixed land-line telephones, were located in more than one jurisdiction. Under the interpretation of “executed” for which the defendant argues, the district attorney could be required to obtain warrants from judges in two or more jurisdictions. Such a result would undesirably divide supervision of the execution of the warrants between or among the issuing judges, and could thereby prejudice the defendant. (See United States v Rodriguez, 968 F2d at 136 [noting that by holding that a warrant is executed where the communications were intercepted the court furthered “(o)ne of the key goals of Title III(,) . . . the protection of individual privacy interests from abuse by law enforcement authorities,” by enabling one judge to supervise an investigation that spanned more than one judicial district, because “(i)f all of the authorizations are sought from the same court, there is a better chance that unnecessary or unnecessarily long interceptions will be avoided” (citations omitted)]).
In any case, the Legislature has provided other means for protecting against the specter of inappropriate “forum shopping” raised by the defendant’s argument. First, an eavesdropping warrant may only be issued upon the application made by “an applicant who is authorized by law to investigate, prosecute or participate in the prosecution of the particular designated-offense which is the subject of the application” (CPL 700.10 [1]). Such an applicant would likely have no reason to submit the application to a judge if there were not “a sufficient nexus” (see People v Di Pasquale, 47 NY2d at 765) between the crime under investigation and a county within the judge’s jurisdiction, particularly if that county were outside the district attorney’s own jurisdiction. Moreover, even if an application were made to *593 such a judge, the judge would have the power to reject it — and in the absence of such a nexus would presumably do so — since CPL 700.15 (1) provides that an eavesdropping warrant “may” — rather than “must” — issue “[u]pon an appropriate application made in conformity with [article 700].”
In this case, in particular, there is no indication of such inappropriate “forum shopping,” since the District Attorney of the county in which the conversations were intercepted — that is, Bronx County — had jurisdiction over the crimes that were the authorized subject of the eavesdropping, and not only brought the applications for the eavesdropping warrants and pen register and trap and trace device orders in this county, but also sought and obtained in this county an indictment charging the defendant and others with those crimes.
In sum, in this case, even though the land-line telephones were located in New York County, all of the telephonic and electronic communications over those telephones were routed to and intercepted in Bronx County, as was the pen register and trap and trace information. Accordingly, a justice of the Twelfth Judicial District was authorized to issue the eavesdropping warrants and pen register and trap and trace orders. For these reasons, the defendant’s motion to suppress the evidence obtained in the execution of the warrants, and the fruits of that evidence, is denied.

. Note, however, that it is not ineffective to fail to make a preclusion motion, like this one, that is without merit. (See People v Martinez, 201 AD2d 671, 671-672 [2d Dept 1994] [“(s)ince any application for preclusion on this ground would have been unsuccessful, the defense counsel was not remiss in failing to so move”]; see also People v Torres, 2 AD3d 367 [1st Dept 2003] [court rejected claim of ineffective assistance of counsel for attorney’s failure to raise issues at Huntley hearing for which there was no support in the record]; People v Belgrave, 143 AD2d 103, 103 [2d Dept 1988] [“Where, as here, any application to suppress identification testimony would likely have been denied, it was not remiss for counsel to fail to pursue a hearing”].)

. They also had connected the defendant to other locations in Bronx County where they believed illegal gambling activities were being conducted, including 1235 Grant Avenue; 1410 Fulton Avenue; 182 East 166th Street; 1418 Clay Avenue; 286 West 169th Street; 3052 Valentine Avenue; 71 Mount Eden Avenue; 481 East 180th Street; 218 East 167th Street; 1965 Webster Avenue; 3754 Third Avenue; 1417 Prospect Avenue; and 1801 University Avenue.

. The February 26, 2004 order permitted the interception of telephonic communications transmitted over five telephone lines: (212) 569-0055, 569-0333, 569-1515, 569-1777, and 569-1199. Soon after interception commenced, the People discovered that two of the five telephone lines, (212) 569-0055 and 569-1777, were being used almost exclusively for the transmission of facsimiles. On March 5, 2004, they sought and were granted a prospective amendment of the eavesdropping warrant by Justice John P. Collins, Administrative Judge and Acting Justice of the Supreme Court of Bronx County. The amendment permitted the interception of electronic communications as well as telephonic communications over those two telephone lines. On March 11, 2004, the People sought, and Justice Davidowitz granted, a prospective amendment authorizing the interception of electronic communications over (212) 569-1515, which they discovered was also used primarily to transmit faxes. On that same day, Justice Davidowitz also issued an order authorizing the retrospective preservation and the prospective interception of electronic communications, specifically, numeric communications, over telephone lines bearing the numbers (212) 569-0333 and 569-1777. On March 25, 2004, Justice Davidowitz ordered the extension of the interception of communications over four of the telephone lines: (212) 569-0055, 569-0333, 569-1515, and 569-1777. The People did not seek an extension for interception over telephone line (212) 569-1199. On April 22, 2004 and on May 21, 2004, Justice Davidowitz ordered the extension of the authorization for the interception of telephonic and electronic communications over three telephone lines: (212) 569-0055; 569-1515; and 569-1777. The People did not seek an extension for interception of communications over telephone line (212) 569-0333.

. The February 26, 2004 eavesdropping warrant also authorized the use of pen register and trap and trace devices on the same five telephone lines, assigned numbers (212) 569-0055, 569-0333, 569-1515, 569-1777, and 569-1199. The March 25, 2004 extension also authorized the continued use of trap and trace devices on four of the telephone lines: (212) 569-0055, 569-0333, 569-1515, and 569-1777. The April 22, 2004 and May 21, 2004 extensions authorized the continued use of trap and trace devices over those same four telephone lines. On June 21, 2004, after the final extension of the eavesdropping warrant expired, Justice Davidowitz extended the authorization for the use of pen registers and trap and trace devices on those same telephone lines.

. Presumably the defendant’s challenge extends as well to the amendment to the warrant issued by Justice Collins.

. During the interception of communications transmitted over the telephone lines in the apartment at 4761 Broadway, New York, New York, the People were authorized by Justice Davidowitz to intercept telephonic communications transmitted over a cellular telephone assigned the number (917) 887-1212, belonging to Joel Contreras, who was listed as living at an address in North Bergen, New Jersey. On May 27, 2004, Justice Davidowitz authorized the interception of telephonic communications transmitted over two additional cellular telephones, one assigned the number (917) 921-8653, subscribed to by the defendant at the apartment at 4761 Broadway, New York, New York, and the other, assigned the number (917) 270-8207, subscribed to by the defendant’s son, Nelson Perez, at an address in New City, New York.

. According to the People’s unchallenged allegations, interception of the communications over the cellular telephones was also accomplished by means of the telephone companies, Nextel and Verizon Wireless, routing the communications to the Abbott Street location through use of its cellular towers. The communications were received in Abbott Street simultaneously with their transmission over the cellular telephones.

. “Eavesdropping” includes both “wiretapping,” that is, the interception of “telephonic communications,” and the “intercepting or accessing of an electronic communication,” including facsimile communications. (CPL 700.10 [1]; see Penal Law § 250.00 [1], [6].)

. See also Penal Law § 250.00 (1), which defines “wiretapping” as “the intentional overhearing or recording of a telephonic . . . communication . . . without the consent of either the sender or receiver, by means of any instrument, device or equipment”; and Penal Law § 250.00 (6), which defines “ [intercepting or accessing of an electronic communication” as “the intentional acquiring, receiving, collecting, overhearing, or recording of an electronic communication [without such consent and by such means].”

. The court also found it just as unreasonable to consider as the place of execution the location at which a telephone company actually reroutes the calls to law enforcement, since that “would result in a limited number of jurisdictions authorized to issue all the eavesdropping warrants in the State regardless of whether or not that jurisdiction has any connection or interest in either the crime or the parties involved.” (Id.)